LaSALLE BANK LAKE VIEW, an Illinois Banking Corporation, Plaintiff–Appellee,

v.

Rafael SEGUBAN and Ellen Seguban, Defendants–Appellants.

Nos. 94–2394, 94–2544.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1994.

Decided May 5, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied June 7, 1995.

Michael L. Shakman, Barry A. Miller, Edward W. Feldman (argued), Bernard A. Schlifke, Miller, Shakman, Hamilton, Kurtzon & Schlifke, Chicago, IL, for LaSalle Bank Lake View.

Michael D. Robbins (argued), Chicago, IL, for Rafael Seguban.

Patrick A. Tuite, Arthur L. Klein (argued), Kurt J. Heinz, Arnstein & Lehr, Chicago, IL, for Ellen Seguban.

Before COFFIN,* CUDAHY and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

■ LaSalle Bank Lake View has sued its former Assistant Teller Manager, Ellen Seguban, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) & (d), asserting that she embezzled $940,000 from the bank during twelve years of her employment there. The action, which was filed on September 29, 1993, also named as a defendant Ellen's husband, Rafael Seguban, alleging that he accepted and used the funds with full knowledge of their illegal source.[1] Along with its RICO claims, the bank brought supplemental state law claims for breach of fiduciary duty, conversion, and fraud.

In addition to this civil action, the Bank's allegations spawned a criminal investigation by the United States Attorney for the Northern District of Illinois. That investigation was underway on February 4, 1994, when the Bank moved for summary judgment in this action. The Segubans therefore asserted their Fifth Amendment privilege against self-incrimination in response to the Bank's motion and offered no evidence to rebut the Bank's statement of material facts. Finding that the Segubans had thereby failed to show the existence of a material factual dispute, the district court granted the Bank's motion and entered judgment against the Segubans in the amount of $2,820,000, three times the Bank's damages of $940,000, in accordance with RICO's trebling provision, 18 U.S.C. § 1964(c). The Segubans now appeal, arguing that the district court improperly drew an inference of guilt based on their assertion of the Fifth Amendment privilege, and that without that inference the evidence did not entitle the bank to judgment as a matter of law. We reverse and remand for further proceedings.

I.

The Northern District of Illinois' Local Rule 12(M) requires that a movant for summary judgment file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law...." In response to that statement, Local Rule 12(N) requires the opposing party to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific refer-

---

* The Honorable Frank M. Coffin of the United States Court of Appeals for the First Circuit, sitting by designation.

1. The Bank charged Rafael with participating in a conspiracy to violate RICO under 18 U.S.C. § 1962(d).

ences to the affidavits, parts of the record, and other supporting materials relied upon" and "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment ...," also supported by record citations. Finally, Rule 12(N) admonishes that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." We have on numerous occasions upheld a district court's strict adherence to that rule. *See, e.g., Stewart v. McGinnis,* 5 F.3d 1031, 1034 (7th Cir.1993) (collecting cases), *cert. denied,* —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994). Thus, if the party opposing summary judgment fails to respond to the facts set out by the movant, the court may assume those facts to be admitted and use them in determining whether the movant is entitled to judgment as a matter of law. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994) (collecting cases). The first question posed by this appeal is whether the normal operation of Rule 12(N) is precluded here because the Segubans' failure to file a 12(N) response was based on their assertion of the Fifth Amendment privilege.[2]

■ The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." Not limited to the criminal context, the privilege protects the individual from being compelled " 'to answer official questions put to him in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' " *Baxter v. Palmigiano,* 425 U.S. 308, 316, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976) (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973)). If required to answer, the individual "must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.' " *Id.* (quoting *Lefkowitz,* 414 U.S. at 85, 94 S.Ct. at 326). In addition to direct compulsion, the Supreme Court has prohibited practices that are coercive in that they make the exercise of the privilege "costly." *Spevack v. Klein,* 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967). Into that category the Court has placed sanctions with serious economic consequences, such as the loss of employment or state contracts. *See Lefkowitz,* 414 U.S. 70, 94 S.Ct. 316 (architects may not be forced to choose between loss of state contracts and self-incrimination); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) (public employees may not be forced to chose between discharge from employment and self-incrimination); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) (same); *Spevack,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (attorney may not be disbarred for exercising the privilege); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (testimony compelled by threatened loss of employment cannot be used in subsequent criminal prosecution); *see also National Acceptance Co. v. Bathalter,* 705 F.2d 924, 927–28 (7th Cir. 1983).

In *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Court discussed whether the drawing of an adverse inference from Fifth Amendment silence in a civil proceeding imposed too high a cost on the exercise of the privilege.[3] In that case, a prison inmate had been brought before a prison disciplinary board on charges of inciting a disturbance. Informed that state criminal charges might also be brought against him, the inmate was advised that he could remain silent at the disciplinary proceeding, but that his silence "would be held against

---

**2.** The Segubans did not move the district court to stay the Bank's civil action until the criminal investigation was concluded. We therefore need not consider the propriety of such a course, which is sometimes taken to avoid the dilemma faced by defendants like the Segubans. *See, e.g., Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324–26 (9th Cir.1995); *Koester v. American Republic Investments, Inc.,* 11 F.3d 818, 823 (8th Cir.1993); *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1374–76 (D.C.Cir.1980) (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

**3.** In *Griffin v. California,* 380 U.S. 609, 612–15, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965), the Court had held that no evidentiary use may be made of a defendant's assertion of the privilege in a criminal case.

him" in that forum. *Id.* at 312, 96 S.Ct. at 1555. At the hearing, Palmigiano was confronted with incriminating evidence and remained silent. The board placed him in segregation for thirty days and downgraded his institutional status. *Id.* at 313, 317, 96 S.Ct. at 1555, 1557. The Court held that the rule it had articulated in the *Garrity–Lefkowitz* line of cases did not prohibit the drawing of an adverse inference from Fifth Amendment silence in a prison disciplinary proceeding when incriminating evidence had also been presented. Such an inference did not, in other words, impose an unconstitutional cost on the exercise of the privilege. The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own, in the two decades since *Baxter* was decided. *See, e.g., Daniels v. Pipefitters' Ass'n Local Union No. 597,* 983 F.2d 800, 801–02 (7th Cir. 1993); *National Acceptance,* 705 F.2d at 929–932; *Koester v. American Republic Investments, Inc.,* 11 F.3d 818, 823–24 (8th Cir.1993); *RAD Services, Inc. v. Aetna Casualty & Surety Co.,* 808 F.2d 271, 274–75, 277 (3d Cir.1986); *Brink's, Inc. v. City of New York,* 717 F.2d 700 (2d Cir.1983); *Hoover v. Knight,* 678 F.2d 578, 581–82 (5th Cir.1982); *United States v. White,* 589 F.2d 1283, 1286–87 (5th Cir.1979).[4]

But while holding that factual inferences based on the assertion of the privilege do not place too high a cost on its exercise, the *Baxter* Court was just as clear that the rule of *Lefkowitz* and its predecessors would be violated if the failure to testify *alone* were taken as an admission of guilt, without regard to other evidence:

> [T]his case is very different from the circumstances before the Court in the *Garrity–Lefkowitz* decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence,

resulted in loss of employment or opportunity to contract with the State. There, failure to respond to interrogation was treated as a final admission of guilt. Here, Palmigiano remained silent at the hearing in the face of evidence that incriminated him; and, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding this case.

425 U.S. at 318, 96 S.Ct. at 1558. Thus, although "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them" (*id.*), an analysis of that evidence is nonetheless required. Silence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden. The Court reiterated that limitation on *Baxter* the following year in *Lefkowitz v. Cunningham,* which characterized *Baxter*'s holding in this way:

> *Baxter* did no more than permit an inference to be drawn in a civil case from a party's refusal to testify. Respondent's silence in *Baxter* was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted; here, refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions.

431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977).

■ We further explored the constitutionally acceptable inference that could be drawn from the assertion of the Fifth Amendment privilege in *National Acceptance,* 705 F.2d at 924, when we held that the failure to answer the allegations of a civil complaint based on an assertion of the Fifth Amendment privilege[5] could not be construed as an admission

---

4. Notably, the party asserting the privilege is not the only one whose case is consequently impaired. The opponent, unable to obtain discovery, is also disadvantaged. *See, e.g., SEC v. Graystone Nash, Inc.,* 25 F.3d 187 (3d Cir.1994); *National Acceptance,* 705 F.2d at 932; *See also,* Robert Heidt, *The Conjurer's Circle—The Fifth*

*Amendment Privilege in Civil Cases,* 91 Yale L.J. 1062 (1982).

5. Like the Segubans, Bathalter's assertion of the privilege was based on the fact that an investigation by federal prosecutors was simultaneously underway. *Id.* at 926.

of those allegations even though Fed.R.Civ.P. 8(d) [6] would otherwise require that result. We distinguished *Baxter* on the ground that it had considered silence in response to adverse evidence rather than to the mere allegations of a complaint. 705 F.2d at 930. We concluded:

> It is our best judgment, in the light of *Baxter*, that even in a civil case a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage. We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment or at trial.

*Id.* at 932. Thus, deeming an allegation of a complaint to be admitted based on the invocation of the Fifth Amendment privilege without requiring the complainant to produce evidence in support of its allegations would impose too great a cost and exceed the authorization of *Baxter*.

How does the admission of properly supported 12(M) facts, effected automatically by operation of Rule 12(N), fare in light of these cases? It seems to us much closer to the inference permitted by *Baxter* than to the admission prohibited by *National Acceptance*. *Baxter*'s concern, after all (as is clear not only from *Baxter* but from *Cunningham* and *National Acceptance* as well), is that the

defendant's silence be weighed *in light of other evidence* rather than leading directly and without more to the conclusion of guilt or liability. And it was the absence of such other proof that underlay our rejection of the automatic admission effected by Fed.R.Civ.P. 8(d) in *National Acceptance*:

> A complaint, ... no matter how detailed, is not evidence. It contains only averments and claims which, unless admitted, must be proved in order to support a judgment.

705 F.2d at 930. Unlike Rule 8(d), Local Rule 12(N), which deems admitted unrebutted Rule 12(M) facts that *are* evidentiarily supported, does no more than operationalize an inference that could in any event be reasonably drawn from Fifth Amendment silence in the face of such evidence—that the facts it reveals are true. This particular inference seems to us clearly permissible under *Baxter*,[7] and the fact that the admission is achieved automatically through operation of a rule rather than subjectively by a finder of fact does not, in our view, overstep the bounds of constitutional acceptability.[8]

*Baxter*'s limitation, however, bears repetition at this point: although inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and "without regard to the other evidence" exceeds constitutional bounds. 425 U.S. at 318, 96 S.Ct. at 1558; *see also White*, 589 F.2d at 1287 ("a

6. Rule 8(d), which has not changed since the issuance of *National Acceptance*, provides that "[a]verments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading."

7. The "inference" effected by Rule 12(N)—that the facts revealed by the opponent's evidence are true—seems to be among the more conservative of inferences that might be drawn from Fifth Amendment silence, because it does not give any separate and additional evidentiary weight to the silence itself. The propriety in the summary judgment context of drawing any additional inferences from silence (such as that the withheld testimony would have been harmful to the defendant's case) poses a more difficult question. Treating the Segubans' silence as a separate piece of evidence supporting the Bank's motion for summary judgment and drawing inferences against the Segubans on the basis of that fact seems to be in tension with the ordinary summary judgment rule that all reasonable infer-

ences must be drawn in favor of the nonmovant. We need not address that question here, as the district court does not appear to have made any such inference and the Bank has not suggested that it should have done so.

8. We also note that the Fifth Amendment is in any event least implicated in a civil suit, like this one, between two private parties. As Justice Brennan noted when he dissented from the Court's holding in *Baxter*:

> I would have difficulty holding such an inference impermissible in civil cases involving only private parties.... In a civil suit involving only private parties, no party brings to the battle the awesome powers of the government, and therefore to permit an adverse inference to be drawn from exercise of the privilege does not implicate the policy considerations underlying the privilege.

425 U.S. at 335–36, 96 S.Ct. at 1566–67 (Brennan, J., dissenting); *see also, National Acceptance*, 705 F.2d at 929.

grant of summary judgment merely because of the invocation of the fifth amendment would unduly penalize the employment of the privilege."). Our holding regarding Rule 12(N), then, is conditioned on the fact that the admission it effects *does not* lead directly and without more to the entry of summary judgment, but merely establishes the factual basis from which the Rule 56 analysis will proceed. As we recently explained in *Johnson v. Gudmundsson*,

> "[S]trict enforcement of Rule 12(n) does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." ... Rule 56(e) permits judgment for the moving party only "*if appropriate*—that is, if the motion demonstrates that there is no genuine issue of material fact *and* that the movant is entitled to judgment as a matter of law." ... Thus, even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper "as a matter of governing law."

35 F.3d 1104, 1112 (7th Cir.1994) (citations omitted) (emphasis in *Johnson*). And the district court's obligation in this regard is more than perfunctory:

> When the judgment entered is a summary judgment based on a defaulted 12(n) filing, ... the district court must give its reasons on the merits for granting summary judgment. Strict enforcement of Rule 12(n) does not mean that a party's failure to submit a timely filing automatically results in summary judgment, the district court must make the further finding that given the undisputed facts, summary judgment is proper as a matter of law.... "Where the evidentiary matter in support of the motion [for summary judgment] does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." [T]he district judge must find that construing all material facts in the movant's favor as a result of the nonmovant's defaulted filing, summary judgment is appropriate.

*Wienco Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir.1992) (citations omitted);

*see also Johnson*, 35 F.3d at 1116 ("[The nonmovant's] shortcomings do[ ] not relieve the court of its statutory task of determining whether 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact....' "). A clear explication of the district court's reasoning is also required by our Circuit Rule 50, which provides:

> Whenever a district court dismisses a claim or counterclaim or grants summary judgment, the district judge shall give his or her reasons for the dismissal of the claim or counterclaim, or the granting of summary judgment, either orally on the record or by written statement.

As we recently reiterated in *Pasquino v. Prather*, that rule serves three functions:

> "to create the mental discipline that an obligation to state reasons produces, to assure the parties that the court has considered the important arguments, and to enable a reviewing court to know the reasons for the judgment." Thus, we have made clear that Circuit Rule 50 "should leave no doubt that reasons and explanations must be given by a district judge as to what facts and law have lead [sic] him to reach the ruling at bar."

13 F.3d 1049, 1050 (7th Cir.1994) (citations omitted). The onus on the district court to engage in the second step of the summary judgment analysis is particularly weighty here, where that analysis alone distinguishes a constitutional from an unconstitutional approach.

## II.

Here, the district court's summary judgment analysis consisted of the following:

> [I]n light of the facts adduced by the Bank in conjunction with the permissible negative inference drawn from the Segubans' assertion of their Fifth Amendment privilege, no reasonable trier of fact could find in favor of either of the Segubans.... The undisputed facts demonstrate that the Bank is entitled to a judgment as a matter of law on its claims under RICO and pendent state claims.

(May 11, 1994 Order at 9.) Because it fails to explain how the facts in the Bank's 12(M) statement entitle it to judgment as a matter of law on its civil RICO claim (not to mention its state law claims for breach of fiduciary duty, conversion and fraud), the district court's analysis is insufficient. Although the lack of an explanation alone would justify a remand (*see Sims v. Lucas,* 9 F.3d 1293, 1294 (7th Cir.1993) (the usual remedy for a violation of Rule 50 is to remand the case to the district court for compliance)) and would certainly do so here in light of the constitutional implications, our concern in this instance is more than formal. Even assuming the facts contained in the Bank's Rule 12(M) statement to be true, it does not seem to us at all clear that the Bank was entitled to judgment as a matter of law.

██ Although we are without the benefit of any analysis by either the district court or the parties, it appears that the Bank may well have failed to establish a violation of 18 U.S.C. § 1962(c), which provides the sole basis for the Bank's receipt of nearly $3,000,000 in trebled damages.[9] To state a claim under section 1962(c), a plaintiff must show the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). According to the Bank's theory, the RICO "enterprise" here was the Bank itself, whose affairs Ellen Seguban allegedly "conducted" through a pattern of racketeering activity. (R. 26, Amended Complaint, ¶¶ 41–42.) That theory is, to say the least, questionable under the Supreme Court's recent RICO decisions. In *National Organization for Women, Inc. v. Scheidler,* for example, the Supreme Court noted that "the 'enterprise' in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." —— U.S. ——, ——, 114 S.Ct. 798, 804, 127 L.Ed.2d 99 (1994). And although not yet widely considered by the circuit courts of appeals, the Third Circuit has understood *Scheidler's* language to rule out claims like this one against an embezzling employee:

> [A] victim corporation "drained of its own money" by pilfering officers and employees could not reasonably be viewed as the enterprise *through* which employee persons carried out their racketeering activity. Rather, in such an instance, the proper enterprise would be the association of employees who are victimizing the corporation, while the victim corporation would not be the enterprise, but instead the § 1962(c) claimant.

*Jaguar Cars Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 267 (3d Cir.1995) (emphasis in original).

Nor is it clear, even if the Bank could be considered the RICO enterprise, that a bank teller (albeit a bank teller manager) could, under the case law, be considered "to conduct or participate, directly or indirectly, in the conduct" of the Bank's affairs. Exploring that requirement in *Reves v. Ernst & Young,* the Supreme Court held that to be liable under section 1962(c), "one must participate in the operation or management of the enterprise itself." —— U.S. ——, ——, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). The Court explained:

> Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear

---

9. The Bank brought claims under 18 U.S.C. § 1962(c) against Ellen and under 18 U.S.C. § 1962(d) against both Segubans. Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(d) provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection 9(a), (b), or (c) of this section.

If the Bank fails to establish a violation of section 1962(c), its section 1962(d) claim based on the same facts must fail as well. *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1026 (7th Cir.1992).

**394**

that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, ... but *some* part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

*Id.* at ——, 113 S.Ct. at 1170 (emphasis in *Reves*). Although the Court noted that liability was not limited to upper management under this test, it declined to decide how far "down the ladder of operation" liability might extend. *Id.* at —— & n. 9, 113 S.Ct. at 1173 & n. 9. *Cf. United States v. Viola,* 35 F.3d 37, 41 (2d Cir.1994) ("Since *Reves,* it is plain that the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c).") We leave for the district court to consider Ellen Seguban's responsibilities in light of *Reves,* if *Scheidler* does not make that analysis unnecessary.

### III.

Without any explanation of why the Bank was entitled to judgment as a matter of law, we are helpless to review the district court's decision. But because the Bank's entitlement to judgment appears to us far from self-evident, we must conclude that the district court did draw an impermissible inference of liability based only on the Segubans' assertion of the Fifth Amendment privilege. If, even drawing those inferences from the Segubans' silence that are permissible, the facts do not entitle the Bank to judgment as a matter of law, then its motion for summary judgment must be denied regardless of the Segubans' failure to comply with Rule 12(N). The judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.