**Cory D. CHAN, Plaintiff,**

v.

**CITY OF CHICAGO, a municipality, the Chicago Police Department, an instrument of a municipality, Leroy Martin, individually and in his capacity as Superintendent of the Chicago Police Department, Edward S. Wodnicki, individually and in his former capacity as Deputy Superintendent of the Chicago Police Department, Bureau of Investigative Services, Elgia Cook, individually and in his capacity as Chief of the Organized Crime Division, Ronald T. Moran, individually and in his former**

capacity as Commander of the Intelligence Section, and John Guarnieri, individually and in his capacity as a Lieutenant in the Intelligence Section of the Chicago Police Department and as the Lieutenant in charge of the Chicago Terrorist Task Force, Defendants.

No. 91 C 4671.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 20, 1996.

Susan Bogart, Law Offices of Susan Bogart, Chicago, IL, Latasha R. Thomas, Chicago, IL, and Ruth Elaine Van Demark, Law Offices of Ruth E. Van Demark, Chicago, IL, for plaintiff.

Patricia M. Carroll–Smit, City of Chicago, Law Department Corporation Counsel, David J. Seery, City of Chicago, Law Department,

and Susan S. Sher, Corporation Counsel, City of Chicago, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Cory D. Chan, alleged that defendant, Edward S. Wodnicki, removed him from his position with the Chicago Terrorist Task Force ("Task Force") and with the Intelligence Section of the Chicago Police Department ("CPD") for asserting his Fifth Amendment privilege before a federal grand jury on August 9, 1989.[1] Mr. Chan claimed that by transferring him out of these positions in August, 1989, Mr. Wodnicki violated his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution and Section 1983, 42 U.S.C. § 1983. The defendants filed a motion for summary judgment arguing that Mr. Wodnicki was entitled to qualified immunity, which I denied. *Chan v. City of Chicago*, No. 91 C 4671, 1995 WL 431238, *3 (N.D.Ill. July 19, 1995). The case proceeded to trial, after which the jury rendered a verdict against Mr. Wodnicki and in favor of Mr. Chan. The jury awarded Mr. Chan $21,000 for lost earnings and benefits; $10,000 for pain, suffering, and mental anguish; and $121,000 in punitive damages.

Mr. Wodnicki has renewed his motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). For the following reasons, his motion is granted.

### Standard of Review

"Judgment as a matter of law is appropriate only when there can be but one conclusion from the evidence and inferences reasonably drawn therefrom." *Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir.1995) (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir.1993); *see also Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir.1992).

### Qualified Immunity

The doctrine of qualified immunity accords "public officials the benefit of legal doubts" by shielding all officials from civil liability, except those who are "plainly incompetent" or "who knowingly violate the law." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176–77 (7th Cir.1994). Qualified immunity protects public officials from individual liability if their conduct did not violate "clearly established ... constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). It is the plaintiff's burden to demonstrate the existence of a clearly established constitutional right. *Id.*

Moreover,

> the right allegedly violated must have been 'clearly established' in a 'particularized' sense and 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'

*Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987)).

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The privilege extends to protect an individual from being compelled "to answer official questions put to him in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389 (7th Cir.1995) (citations omitted). The Supreme Court prohibits not only direct compulsion but also "practices that are coercive in that they make the exercise of the privilege 'costly.'" *Id.* (citing *Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967)). Thus, sanctions for exercising Fifth Amendment rights constituting a "substantial penalty," including those with "serious economic consequences, such as the loss of employment or state contracts," are forbidden. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135–36, 53 L.Ed.2d 1 (1977); *LaSalle Bank Lake View v. Seguban, supra*, 54 F.3d at 389–91, 394 (citing Supreme Court cases cited *infra* and indicating in civil proceeding that $2,820,000 judgment against defendant who invoked

---

1. Mr. Chan returned to the Intelligence Section in July, 1995.

Fifth Amendment privilege may not be prohibited penalty if defendant's silence weighed in light of the evidence shows that plaintiff deserves judgment).

The penalties that the Supreme Court has held may not be meted out in return for asserting the Fifth Amendment privilege include the loss of a job, loss of state contracts, loss of future contracting privileges with the state, loss of political office, and loss of the right to run for political office in the future. *See Spevack v. Klein, supra,* 385 U.S. at 514–19, 87 S.Ct. at 627–30 (attorney may not be disbarred for exercising Fifth Amendment privilege); *Gardner v. Broderick,* 392 U.S. 273, 278–79, 88 S.Ct. 1913, 1916–17, 20 L.Ed.2d 1082 (1968) (public employees may not be forced to choose between termination from employment and self-incrimination); *Lefkowitz v. Turley,* 414 U.S. 70, 84–85, 94 S.Ct. 316, 325–26, 38 L.Ed.2d 274 (1973) (architects may not be forced to choose between loss of state contracts and self-incrimination); *Lefkowitz v. Cunningham, supra,* 431 U.S. at 804–09, 97 S.Ct. at 2135–38 (political party officer may not be required to decide between loss of office and five-year bar on holding another office on the one hand and self-incrimination on the other hand); *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967) (statements obtained under threat of discharge from employment could not be used in subsequent criminal proceedings).

■ Mr. Chan claims violation of a constitutional right by alleging that he was substantially penalized in return for asserting the Fifth Amendment privilege. However, Mr. Chan was not suspended or terminated from his position as a police officer with the CPD. He was transferred out of the Task Force and the Intelligence Section. In 1989, *i.e.,* the year that Mr. Chan was transferred, whether a transfer could violate an individual's rights under the Fifth Amendment was questionable. *See FOP, Lodge No. 5 v. City of Philadelphia,* 859 F.2d 276, 282 n. 10 (3rd Cir.1988) ("The FOP has not cited a single case in the employment context in which any consequence short of suspension or dismissal from employment has been held to constitute compulsion for fifth amendment purposes. We have searched and found none ourselves.").

In resolving the defendants' motion for summary judgment, I did not grant Mr. Wodnicki's request for qualified immunity because I found that the evidence before the court created a jury question as to the extent of Mr. Chan's pecuniary injury. *See Chan v. City of Chicago, supra,* No. 91 C 4671, 1995 WL 431238 at *3. "Although the qualified immunity determination is a legal question it is not answered in the abstract but in reference to the particular facts of the case." *Eversole v. Steele,* 59 F.3d 710, 717 n. 8 (7th Cir.1995). I concluded that even if Mr. Chan had not lost his job, if his loss of income was great, it might be considered so substantial a penalty that Mr. Wodnicki could be charged with knowing that it could result in compulsion.

Following trial, the jury awarded Mr. Chan only $21,000 for lost earnings and benefits. Mr. Chan's transfer—a sanction which the jury found cost him $21,000—does not rise to the level of penalties which have been labeled "substantial" because it is not comparable to the penalties which the Supreme Court has found impose an unconstitutional cost on the exercise of the Fifth Amendment privilege.[2]

---

**2.** Mr. Wodnicki contends that the jury's $21,000 award was not supported by the evidence presented at trial. Def.'s Memo., pp. 6–7 n. 2. It is unnecessary to resolve this argument: because I hold that the cases do not support a claim that Mr. Wodnicki should have known that $21,000 was a substantial penalty, the cases certainly do not indicate that he should have known that a lesser figure was such a penalty. Mr. Chan does not argue that in deciding if he suffered a substantial penalty, I should take into account the jury's award of $10,000 for pain, suffering, and mental anguish. Doing so would not change my analysis or conclusion.

Although Mr. Chan's response to Mr. Wodnicki's motion discusses the amounts he feels he lost as a result of being transferred, Pl.'s Resp., pp. 4–5, 12–13, nowhere in the response does Mr. Chan argue that the jury should have awarded him more than $21,000 in lost earnings and benefits. Mr. Chan also has not filed any post-trial motion, *e.g.,* a motion for additur, requesting that the court take steps to increase the jury's compensatory damage award. In fact, in Plaintiff's Response to Defendant's Motion to Alter or

Mr. Chan was not required to relinquish his livelihood—he did not lose his job as a police officer in the CPD, and his base pay was not affected. Notably, Mr. Chan argued that he suffered financially only because he lost overtime opportunities and the use of a car to drive to and from work. Moreover, it is enlightening to view the $21,000 loss over the period from August, 1989 to July, 1995, the time during which Mr. Chan claims he incurred the loss. According to the jury, Mr. Chan should have earned $274,782.51 over those years. In actuality, he earned $253,-782.51. Thus, he lost only 7.6 percent of his income. A loss of 7.6 percent of one's income is not the type of injury that either the Supreme Court or the Seventh Circuit has in the past found to be substantial. *See La-Salle Bank Lake View v. Seguban, supra,* 54 F.3d at 389.

A 7.6 percent loss in income is not something that most wage earners probably would think insignificant. Nevertheless, it is not the equivalent of a loss of job, loss of the privilege to contract with the state, loss of political office or loss of the right to run for political office in the future. Thus, whether or not an appellate court might hold that it is so substantial as to constitute an impermissible penalty in the future, any right not to face this penalty was not clearly established in 1989.

Mr. Chan argues that the injury to his reputation renders his transfer a substantial penalty, citing *Lefkowitz v. Cunningham, supra,* 431 U.S. at 806, 97 S.Ct. at 2136, for the proposition that

the touchstone of the Fifth Amendment is compulsion, and direct economic sanctions and imprisonment are not the only penal-

ties capable of forcing the self-incrimination which the Amendment forbids.

The Supreme Court in *Cunningham* discussed the ramifications of the appellee's loss of his political offices:

Appellee's party offices carry substantial prestige and political influence, giving him a powerful voice in recommending or selecting candidates for office and in other political decisions. The threatened loss of such widely sought positions, with their power and perquisites, is inherently coercive. Additionally, compelled forfeiture of these posts diminishes appellee's general reputation in his community.

There are also economic consequences; appellee's professional standing as a practicing lawyer would suffer by his removal from his political offices under these circumstances. Further, . . . appellee [would be barred] from holding any other party or public office for five years. Many such offices carry substantial compensation.

*Id.* at 807, 97 S.Ct. at 2136. It is unclear whether the jury found that the transfer injured Mr. Chan's reputation. The jury awarded $10,000 for pain, suffering, and mental anguish, but Mr. Chan agreed that the verdict form should not specifically provide for assessing damages for reputation injury. Tr. 881–83. At any rate, the evidence presented by Mr. Chan at trial did not demonstrate that he suffered an injury equivalent to the appellee's injury in *Cunningham.*

In conclusion, at the time of Mr. Chan's transfer in 1989, the law was not clearly established that the type of injury inflicted upon him violated his rights under the Fifth Amendment; therefore, Mr. Wodnicki is qualifiedly immune from liability.[3]

Amend the Judgment, p. 4, Mr. Chan argues that the jury's compensatory damage award is "rational, rationally connected to the evidence and 'roughly comparable' to awards made in similar cases."

3. Mr. Chan argues that the jury award does not include front pay, which he says increases his damage. Mr. Chan filed a post-trial motion requesting front pay and permission to present additional evidence on this issue. My July 31, 1995 order instructed Mr. Chan that any motion seeking front pay should "refer specifically to all evidence that will show that he continues to

suffer a loss of pay." Mr. Chan's motion flaunts this order. Although Mr. Chan insists that there is evidence in the trial record supporting an award of front pay, he makes few references to the record. In his entire brief, only two sentences are followed by citations to the record. Three of these cites are incomplete, with blank spaces where page numbers should be. Checking the few complete cites that Mr. Chan provides, I find that he did not demonstrate that he continues to suffer diminished income. Accordingly, the loss of income found by the jury cannot

### Conclusion

For the foregoing reasons, Mr. Wodnicki's motion for judgment as a matter of law is granted.

be increased by any prediction of damage continuing into the future.