Deann P. CLANCY, Plaintiff,

v.

Robert Leo COYNE, Defendant.

No. 01 C 5685.

United States District Court,
N.D. Illinois, Eastern Division.

Oct. 11, 2002.

Donald C. Clark, Jr., Jennifer Susan Holloway, Clark & DeGrand, Chicago, IL, Tracey L. Wolfe, Luke DeGrand & Assoc., P.C., Chicago, IL, for plaintiff.

Keith Louis West, Law Offides of Keith Louis West, Mundelein, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ST. EVE, District Judge.

Defendant Robert Leo Coyne has previously admitted liability in misappropriating and commingling assets in a Trust for which Plaintiff Deann P. Clancy was a beneficiary and Coyne was trustee. Plaintiff Clancy has filed a summary judgment motion seeking to have judgment entered on the amount of damages that Coyne owes. For the reasons stated herein, Clancy's summary judgment motion is granted. Clancy's previously filed motions in limine are dismissed as moot.

## BACKGROUND

Plaintiff Deann P. Clancy is a citizen of the State of Pennsylvania and is a beneficiary of the Ruth S. Bergquist and George G. Bergquist Trust (the "Trust"). (R. 17–1, Pl. Statement of Undisputed Facts ¶ 1.) Defendant Robert Leo Coyne was, at the time of the filing of his answer, practicing law in Wilmette, Illinois.[1] (*Id.* ¶ 2.) Coyne drafted the Trust in the Fall of 1995. Initially, the Bergquists were trustees and Coyne was successor trustee. (*Id.* ¶ 4.) Ruth Bergquist passed away in 1996. (*Id.* ¶ 5.) Sometime before February 1997, Coyne became trustee and attorney-in-fact for George Bergquist. (*Id.* ¶ 6.) George Bergquist died on February 5, 2001. (*Id.* ¶ 5.) Coyne wound up serving as the trustee from February 1997 through October 2001, when he was removed from his duties by Judge Coar. (*Id.* ¶ 3.)

Clancy filed a lawsuit against Coyne on July 23, 2001. Count I stated an action for an accounting of the Trust, Count II alleged that Coyne breached his fiduciary duty as trustee and Count III claimed that Coyne converted Trust assets. (R. 1–1, Compl. ¶ 28–36.) Judge Coar entered judgment against Coyne on Count I of the Complaint, ordering an accounting. (R. 7–1, Oct. 9, 2001 Order.) In November 2001, Coyne consented to liability on Counts II and III of the complaint. (R. 8–1, Am. Consent to Entry of J.) Judge Coar subsequently entered judgment on those counts. (R. 9–1, Nov. 9, 2001 Order.) The only issue pending before this Court is the amount of monetary damages to award to Plaintiff.

In attempting to comply with Judge Coar's order requiring an accounting, Coyne engaged Mr. Charles Queenan, a bookkeeper. (R. 17–1, Pl. Statement of Undisputed Facts ¶ 15.) Queenan prepared a schedule of certain financial transactions relating to the Trust, but could not identify many of the deposits or expenses attributed to the Trust. (*Id.* ¶ 17.) Queenan has no personal knowledge of the underlying transactions made in connec-

---

1. Coyne had previously been suspended from practicing law by the *Illinois Supreme Court* in 1990 after allegations of unethical and unlawful conduct as a trustee of an elderly individual's trust and estate. (R. 1–1, Compl. ¶ 5.) Once the suspension concluded, Coyne resumed the practice of law, much to the detriment of the legal profession and to the Plain-tiff. (*Id.* ¶ 6.) The Illinois Supreme Court disbarred Coyne on June 17, 2002 because of the same conduct complained of here. *See* Illinois Attorney Registration and Disciplinary Committee, Announcement of Disciplinary Decisions, (Sept. 20, 2002), *available at* http://www.iardc.org/co_pressreleases_copy (7).html.

tion with the Trust. (*Id.* ¶ 18.) Queenan based his financial summary, in part, on documents provided to him by Coyne. (*Id.*) Queenan never had an accurate initial inventory of the Trust assets upon which to base his summary. (*Id.*) Queenan's schedule was intended to be a recapitulation of information that he was given by others, rather than an independent audit. (*Id.* ¶ 19.)

Queenan testified that there were, at a minimum, $483,974.96 in assets in the Trust during the time that Coyne served as trustee. (R. 17–1, Pl. Statement of Undisputed Facts ¶ 21.) Out of this total, Queenan could identify $214,161.85 worth of purported Trust expenses. (R. 40–1, Def.'s Statement of Additional Material Facts ¶ 9.) Coyne could not account for the remaining $269,813.11. (*Id.* ¶ 10.) Some of these purported expenses were for services that Coyne claimed to have rendered. For example, the Trust directly paid Coyne $58,889.98. (R. 17–1, Pl. Statement of Undisputed Facts ¶ 22.) In his accounting, however, Queenan could only find $30,966 worth of invoices for Coyne's services. (*Id.*)

In addition to the Trust, Coyne managed a commingled client funds account that contained $52,161.24 in assets that may have been attributable to the Trust. (R. 17–1, Pl. Statement of Undisputed Facts ¶ 23.) Queenan was unable to determine whether the client funds account should have been considered part of the Trust's assets. (*Id.*)

On May 24, 2002, Coyne asserted his Fifth Amendment privilege and refused to testify to any substantive questions at his deposition:

> I hereby represent that I will, and hereby do, exercise my Fifth Amendment privilege regarding all questions, except for my name, asked of me at my deposition noticed for 9:30 a.m., May 24, 2002, at the law firm of Donald C. Clark, Jr.,

One South Wacker Drive, Suite 1495, Chicago, Illinois said deposition pertaining to the above captioned lawsuit.

(R. 16–1, Aff. of Coyne.). Coyne has never waived his Fifth Amendment rights. In drafting a Final Pretrial Order, however, Coyne named himself as a "witness who may be called by Defendant." (Final Pretrial Order, Ex. D.)

## ANALYSIS

Clancy filed a summary judgment motion on the issue of damages. In the Motion, Clancy seeks to have judgment entered for $536,136.20. This amount represents the minimum assets of the Trust while Coyne was trustee, plus the commingled client funds account, with no offset of any expenses for the Trust or for the client funds account.

### I. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of Am.,* 8 F.3d 1206, 1209 (7th Cir.1993). The court examines the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *See Fisher v. Transco Services–Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir. 1992).

Once a moving party has shown that it is entitled to summary judgment with its version of the facts, the nonmoving party must go beyond the pleadings and set forth specific facts showing that a genuine issue exists for trial. *See* Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990). If the evidence is such that a reasonable factfinder could find for the nonmoving party, then a genuine issue of material fact exists.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II. Burdens of Proof

Rule 56(c) mandates that where the non-moving party bears the burden of proof on an issue at trial, summary judgment should be entered if that party fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the [fact-finder] could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Therefore, it is first important for this Court to determine the respective burdens for the parties.

 Under Illinois law, it is the plaintiff's burden to show that a fiduciary commingled assets of the Trust. *See In re Estate of Wallen*, 262 Ill.App.3d 61, 73, 199 Ill.Dec. 359, 633 N.E.2d 1350, 1360 (2d Dist.1994). Once a plaintiff has established the existence of a fiduciary duty and breach, the burden shifts to the defendant to "sort out and account for those assets as he was in the best position to know of them." *Id.* A fiduciary must also prove the legitimacy of the Trust expenses. *In re Niles*, 106 F.3d 1456, 1457 (9th Cir.1997) (defendant had burden to show that she had complied with her fiduciary duties

with respect to all questioned transactions); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir.1988) (defendants must prove any charges or other debts that they wished to advance to limit their liability as fiduciary).

## III. Coyne Cannot Meet His Burden

 Clancy has met her burden through Coyne's admissions of liability in Counts II and III. Coyne has conceded that he was a fiduciary of the Trust and that he breached his fiduciary duties with respect to the Trust. The burden, therefore, shifts to Coyne to provide for an accurate accounting of the Trust assets and expenses. It is undisputed that the Trust had a minimum of $483,974.96 worth of assets. What the parties do dispute is whether any other assets are attributable to the trust and whether Coyne has met his burden in establishing that the Trust's expenses should be offset from the assets.

### A. The Commingled Client Fund must be considered Attributable to the Trust

Coyne admits to commingling a client funds account worth $52,161.24. He does not contest that this account may have been attributable to the Trust. Because of this commingling, it is Coyne's burden to show that the $52,161.24 was not part of the Trust's estate. *In re Estate of Wallen*, 262 Ill.App.3d at 73, 199 Ill.Dec. 359, 633 N.E.2d at 1360. He has presented no contrary evidence.[2] Therefore, this Court

---

2. On July 29, 2002, Defendant responded to Plaintiff's Motion for Summary Judgment. Defendant included a "Statement of Material Facts" that did not conform to Local Rule 56.1(b). (R. 25–1.) This Court entered an Order striking Defendant's Statement of Material Facts, with leave to re-file. (R. 30–1.) In the Order, this Court limited the re-filing to the arguments and facts in the previous response. "No new substantive facts or arguments will be considered by this Court." (*Id.*) Defendant filed its new statement of addition-

al material facts on September 30, 2002, bringing forth for the first time that $18,677.00 of the $52,161.24 client funds account was expended for disbursements. (R. 40–1 ¶ 13.) Defendant originally failed to raise this issue in his July 29 Statement of Material Facts. Because this fact was added to his September 30 Statement of Material Facts in direct violation of this Court's order, it is disregarded. Defendant cannot raise the issue of expenses as it relates to the

finds that Coyne had the fiduciary responsibility as trustee over both the $52,161.24 client funds account and the $483,974.96 in other Trust assets. This provides for a total of $536,136.20 of the Trust's assets. Coyne has not presented any evidence that would allow this Court to reasonably find that the $52,161.24 was properly allocated elsewhere. Indeed, no reasonable fact-finder could find for Coyne on the $52,161.24 commingled funds.

## B. Purported Trust Expenses

The parties are in disagreement over the treatment of the Trust's purported expenses. Coyne believes that the total Trust assets should be offset by $214,161.85. Queenan identified this amount as purported Trust expenses during his accounting. (R. 40–1, Def.'s Statement of Additional Material Facts ¶ 11.)

### 1. Money Spent on Coyne's Services

■ One of the categories of purported expenses was money paid for Coyne's services as trustee. Coyne paid himself $58,889.98 directly from the Trust. In the accounting, however, Queenan could account for only $30,966 worth of invoices for Coyne's services. (*Id.* ¶ 22.) Regardless of whether he could account for these services or not, it is clear that Coyne is not entitled to any reimbursement for his services. "If the trustee . . . misappropriates the trust property or if he intentionally or

negligently mismanages the whole trust, he will ordinarily be allowed no compensation." RESTATEMENT (SECOND) OF TRUSTS § 243 cmt. d (1957); *Jones v. Heritage Pullman Bank and Trust Co.*, 164 Ill. App.3d 596, 604, 115 Ill.Dec. 653, 518 N.E.2d 178, 184, (1st Dist.1988). As Coyne has admitted to misappropriating the trusts assets, he may not offset the $58,889.98 in payments to him from the Trust's assets. Accordingly, Plaintiff is entitled to judgment on this amount.

### 2. Other Purported Trust Expenses

■ Coyne claims that he spent $155,271.87 of the Trust funds on other legitimate expenses. Coyne has set forth no evidence, however, to show that any single transaction was legitimate.[3] The accounting by Queenan is not evidence of the legitimacy of the expenses. Queenan had no firsthand knowledge of the transactions. He could not testify whether a certain expense was actually used for the good of the beneficiaries of the Trust rather than converted for Coyne's use. Queenan's accounting was not meant to be an audit, but a ledger that could not be used to show the expenses were legitimate. *See H.G. Holloway & Bro. v. White–Dunham Shoe Co.*, 151 F. 216, 218 (7th Cir. 1906) (ledger could not be offered to prove balance due where it was not a book of original entries and there was no proof that the entries were just and true); *cf.*

$52,161.24 commingled client fund. Regardless, Defendant did not offer up any evidence that would have shown the legitimacy of the $18,677.00 worth of expenses.

3. Defendant provided details on some of the expenditures for the first time in his September 30, 2002 Statement of Material Facts. Coyne claims that $14,421.74 was spent on funeral expenses and $97,946.06 was paid to Covenant Home. (R. 40–1, Def.'s Statement of Material Facts ¶¶ 7, 8.) These facts were not included in Coyne's July 29, 2002 Statement of Material Facts and, therefore, are disre-

garded. In any event, this Court finds the added statement would not have assisted Coyne in establishing that a dispute over a material fact existed. Coyne relies upon Queenan's deposition testimony to support his assertion of the legitimacy of these expenses. Queenan had no firsthand knowledge of the transactions and therefore could not testify that the funds were used appropriately. Coyne did not provide the Court with any evidence of the purpose of these expenditures. Without that verification, Queenan's testimony and accounting are empty.

*U.S. v. Spiller,* 261 F.3d 683, 690 (7th Cir. 2001) (without personal knowledge of the specific transactions described in ledgers, ledgers were not admissible evidence under the business records exception). By not providing any evidence of those transactions and by refusing to testify, Coyne has failed to make a showing sufficient to establish the existence of an element essential to his case. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Therefore, no offset of the Trust assets for the purported expenses is appropriate.

## IV. How Coyne's Assertion of his Fifth Amendment Rights Affects this Summary Judgment Motion

■ If this were a standard summary judgment motion, the analysis would end with the discussion showing that Coyne did not offer evidence on the elements essential to his case. Coyne, however, has asserted his Fifth Amendment right against self-incrimination, so the Court feels that further analysis is warranted. Coyne is the only person with firsthand knowledge of all of the issues related to damages: the proper assets of the Trust, whether the commingled client funds account truly is attributable to the Trust, and the legitimacy of each of the expenses charged against the Trust. It is appropriate then to balance the rules regarding summary judgment with the Court's respect for Coyne's Fifth Amendment privilege. The Seventh Circuit provides some guidance on this issue.

In *LaSalle Bank Lake View v. Seguban,* the Seventh Circuit issued a comprehensive opinion on the relationship between the Fifth Amendment and summary judgment. 54 F.3d 387 (7th Cir.1995). In that case, the lower court granted summary judgment on behalf of the plaintiff in a RICO action based on the defendant's assertion of Fifth Amendment. The plaintiff did not offer evidence on essential elements of its case. *See id.* at 393. Instead, the plaintiff solely relied upon the negative inferences created by the assertion of the Fifth Amendment. *Id.* at 390. The Seventh Circuit held that a moving party must introduce actual evidence that the elements of its case exist and cannot rest solely on the negative inference associated with the assertion of the Fifth Amendment privilege. *Id.* "Silence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden." *Id.* The reasoning behind the holding was that "the Supreme Court has prohibited practices that are coercive in that they make the exercise of the [Fifth Amendment] privilege 'costly.' " *Id.* at 389 (citations omitted). The Seventh Circuit reversed and remanded the case because the lower court otherwise "fail[ed] to explain how the facts in the [plaintiff's] 12(M) statement entitle[d] it to judgment as a matter of law." *Id.* at 393.

Defendant could (but does not) argue that *LaSalle Bank* precludes this Court from granting summary judgment on behalf of Clancy. A closer look at the opinion, however, shows why summary judgment is appropriate here, while it was not in LaSalle Bank. Here, unlike LaSalle Bank, the movant has met her burden of proof. Clancy does not rely to any degree upon the negative inferences from the defendant's assertion of the Fifth Amendment in attempting to establish the necessary elements of her case. Instead, it is Coyne who has not offered any evidence to meet his burden. As discussed above, Coyne bears the burden of accounting for the Trust expenses. Coyne does not even argue that his assertion of his Fifth Amendment right against self-incrimination has been a barrier to him being able to present a defense. He has not filed a motion under Rule 56(f) to show why summary judgment is not appropriate at this time. *See* Fed.R.Civ.P. 56(f). Coyne sim-

ply has not given this Court a reason to believe that his assertion of the Fifth Amendment prevents him from responding to summary judgment in any way.

Requiring Coyne to offer some evidence in responding to summary judgment where he bears the burden of proof on an issue cannot be labeled as coercion that threatens "substantial economic sanction." *See Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). Coyne could have established this evidence in other ways without waiving his Fifth Amendment rights. He could have, for example, subpoenaed third-parties for information relating to the expenses. He could have offered affidavits of those that received payments stating that the funds were used for the good of the Trust's beneficiaries. It is his failure to offer any evidence of these underlying transactions—not his failure to waive his Fifth Amendment rights—that results in Coyne being unable to show that any genuine issue of material fact exists.

## CONCLUSION

Plaintiff Clancy is entitled to summary judgment. The Plaintiff has proven her essential elements. Coyne has failed to offer any evidence on which the fact-finder could reasonably find for the Defendant. Judgment is entered if favor of Clancy for $536,161.24. All pending motions are dismissed as moot.