**In re DENNIS P.**

No. 98–560–Appeal.

Supreme Court of Rhode Island.

April 28, 2000.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., for plaintiff.

Paula Rosin, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on April 3, 2000, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by the appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided. The facts pertinent to this appeal are as follows.

The respondent mother (respondent or mother) appeals from a Family Court judgment terminating her parental rights. Dennis, respondent's sixth child, was born on February 19, 1994. Shortly thereafter, he was detained in the care, custody, and control of the Department of Children, Youth and Families (DCYF) on an *ex parte* petition based on delayed prenatal care and previous terminations of respondent's parental rights to her other children.[1] Both respondent and the child's father pled to an amended petition alleging dependency, and the child was committed to the care, custody, and control of DCYF.

Lisa Kolek (Kolek), the social worker assigned to the case, prepared four case plans for the parents. Each plan was designed to address similar objectives (to maintain a safe, stable home environment, parenting and care for the child, and to maintain a substance-free lifestyle and avoid illegal activities), and had the goal of reunification. Kolek also referred the parents to Haven Miles (Miles) at the Providence Center for a parent-child evaluation, followed by a referral to the Kent County Mental Health Reunification Program and then followed up by a reevaluation by

---

1. The respondent's parental rights to her five older children had been involuntarily terminated before the instant petition was filed; four children pursuant to Rhode Island law, one pursuant to the laws of the State of California. The trial justice took judicial notice of a Rhode Island Family Court decree terminating respondent's parental rights to three of those children. In an earlier evaluation with respect to the older children, a clinician at the Kent County Mental Health Clinic observed that respondent had a chronic substance abuse problem and that she was unable to care for her children.

Miles. Janet Marquez (Marquez), a clinician at the Kent County Mental Health Clinic, worked with the family throughout the reunification program.

At trial, both Miles and Marquez testified concerning the parents' interaction with the child and their participation and progress in the reunification program. Miles testified that she met and observed mother, father, and child when the child was three months old. At that time, she observed almost no interaction between the parents and the child. She recommended that the parents talk extensively to the child during visits and repeat his sounds, that they hold the child facing them, and that they take a child development course. In her reassessment of the parents and child five months later, Miles noted that the parents had learned to repeat the child's sounds and to properly hold the child, and had many hours of contact with the child over the previous sixteen weeks, but that no relationship had developed between the parents and child. Marquez testified that although the parents' attendance during the first sixteen weeks of the reunification program was good, no improvement in the mother's performance was observed by the end of the first phase of the program. Rather, respondent was able to learn the course material by rote memorization only, and she was unable to apply what she had learned, ignoring the child and disregarding his needs.

Furthermore, in October 1994, respondent also underwent a psychiatric evaluation. It was determined that respondent was mildly mentally retarded and that there was no reason for optimism regarding her ability to modify her pattern and behavior. It was also noted that recurrent concerns about respondent included "inadequate parenting skills, neglect, substance abuse, unstable or inadequate housing or lack of housing, multiple suicide attempts, domestic violence, poor judgment, non-compliance with parent education programs, frequent moves due to fear of physical harm by significant others, reported physical abuse by the father of her last baby, and threats to kill herself on more than one occasion. [Respondent had also] been treated for cocaine abuse * * *."

Based on these observations and reports, as well as the previous history of services, the Kent County Reunification Program did not recommend reunification and did not recommend advancement to Phase II of the reunification program.

Pursuant to a Family Court order, Kolek requested an additional parenting assessment at the Spurwink School (Spurwink) parenting skills program. Loretta Jones (Jones), a former social worker at Spurwink, testified that she met mother, father, and child four times beginning in August 1995 to make the assessment. She testified that although mother and father attempted to establish a relationship with the child, the child did not interact with his parents. Jones observed that the child refused to engage his natural parents in any activity and that he avoided eye contact with them, but that he was more animated when in contact with his foster parents. Jones testified that the child's avoidance of his natural parents and his contentment with his foster parents, and the fact that mother and father ended their relationship in October 1995,[2] were obstacles to reunification. Indeed, Kolek testified that after respondent broke up with the child's father, her visits with the child became very inconsistent. During those visits, respondent had very little in-

---

2. Jones testified that the parents' separation was an obstacle to reunification because she had assessed them as a family and felt that they were able to lend support to each other. After the breakup, respondent began living with another man, with whom respondent had two more children. One child was placed under the guardianship of relatives. The putative father has custody of the other child, but respondent is not allowed to be left alone with the child.

teraction with the child, and the child would play independently.

On April 29, 1998, after a trial in Family Court, the trial justice delivered a decision terminating respondent's parental rights. The trial justice specifically found that DCYF had proven by clear and convincing evidence that respondent lacked the ability to respond to services that would rehabilitate her, that she was not able to achieve an understanding of homemaking, safety issues, child care and parenting, and that she had no condition that would be responsive to treatment or which could be modified to improve her ability to care for her children or manage her life and household. He also found that nothing further could be done for respondent, that she suffered from a mental deficiency which made it improbable that she would be able to care for the child in the foreseeable future, and that it was improbable that any additional program would result in reunification within a reasonable period. Finally, he concluded that DCYF had proven by clear and convincing evidence that respondent was unfit and that termination of her parental rights was in the best interests of the child.

The respondent then filed the instant appeal arguing that the Family Court justice erred when he concluded that DCYF had made reasonable efforts to reunify her with her son. The respondent argues that, in light of her limited cognitive abilities, DCYF should have done more than send her to Spurwink for an evaluation. The respondent also argues that DCYF should have provided Dennis with services that might have helped him overcome his resistance to his mother.

 "Parents enjoy a fundamental liberty interest in the 'care, custody, and management' of their children. * * * [B]efore the state may permanently sever the rights of a parent in his or her natural children, the state must prove by clear and convincing evidence that the parent is unfit." *In re Nicole B.*, 703 A.2d 612, 615 (R.I.1997). Once a parent has been adju-

dicated unfit, "the balance shifts so that the 'best interests of the child outweigh all other considerations.'" *Id.* (quoting *In re Kristen B.*, 558 A.2d 200, 203 (R.I.1989)). In reviewing the ruling of the Family Court, we must examine the record to determine whether legally competent evidence exists to support the trial justice's findings. "A Family Court justice's findings are entitled to great weight and will not be disturbed absent a showing that the trial justice was clearly wrong or that material evidence was overlooked or misconceived." *In re Nicole B.*, 703 A.2d at 615.

In its petition to terminate respondent's parental rights, pursuant to G.L.1956 § 15–7–7, DCYF alleged that respondent was unfit for three reasons: (1) because of the previous terminations of her parental rights to her other children, *id.* at (a)(2)(iv), (2) because of respondent's emotional illness, mental illness, or mental deficiency, *id.* at (a)(2)(i), and (3) because of allegations that respondent abandoned or deserted the child, *id.* at (a)(4). The trial justice granted the petition on the basis of the first two allegations, and denied and dismissed the third allegation because DCYF had not proven by clear and convincing evidence that respondent had abandoned or deserted the child. Accordingly, we will examine the propriety of the termination of parental rights on the basis of the first two allegations.

Pursuant to the Termination of Parental Rights statute, § 15–7–7(a)(1), (a)(2)(i), or (a)(2)(iii), "the petitioning agency, as a condition precedent [to the termination of parental rights], must satisfy the trial court by clear and convincing evidence that 'reasonable efforts' were undertaken to 'encourage and strengthen the parental relationship.'" *In re Nicole B.*, 703 A.2d at 617 (quoting § 15–7–7(b)(1)). However, "[i]n the event that a petition is filed pursuant to subsection (a)(2)(ii), (a)(2)(iv), (a)(2)(v), (a)(2)(vi) or (a)(4), the department has no obligation to engage in reasonable efforts to preserve and reunify a family." Section 15–7–7(b)(1).

As an initial matter, respondent's parental rights were appropriately terminated on the basis of § 15–7–7(a)(2)(iv). That section provides that the court shall terminate parental rights if

> "the court has previously involuntarily terminated parental rights to another child of the parent and the parent continues to lack the ability or willingness to respond to services which would rehabilitate the parent and provided further that the court finds it is improbable that an additional period of services would result in reunification within a reasonable period of time considering the child's age and the need for a permanent home." *Id.*

As was previously stated, DCYF is not obligated to engage in reasonable efforts to preserve and reunify the family when a petition is filed based on this ground.

In regard to the allegation of unfitness, the trial justice found that respondent's parental rights to four other children previously had been involuntarily terminated because of an unsatisfactory demonstration of adequate parenting, substance abuse, unstable housing, mental health issues, poor living conditions, volatile family relationships, and mild retardation that impaired her parenting ability. The trial justice also found that in the instant case respondent lacked the ability to respond to services that would rehabilitate her and that it was improbable that any additional continuance would result in reunification within a reasonable period. There is ample support for these findings. Evidence introduced at trial established that from 1986 until 1990, and again in 1994, respondent participated in various programs designed to address home management, homemaking, and parenting. Marquez testified that despite respondent's ability to learn the course materials by rote memorization, respondent was unable to apply what she had learned. Doctor Douglas Robbins, who conducted respondent's psychiatric evaluation, stated in his report that there was no reason for optimism

concerning her ability to modify her behavior. Finally, Kolek testified that she had concerns about respondent's judgment and parenting ability because respondent, at one point, deliberately stopped taking her seizure medication and because she was unable to obtain and maintain her own apartment. The evidence clearly supports terminating respondent's parental rights on the basis of this testimony.

The evidence also supports terminating respondent's parental rights on the basis of § 15–7–7(a)(2)(i). Pursuant to this provision, DCYF must prove by clear and convincing evidence that it made "reasonable efforts" to "encourage and strengthen" the parental relationship. *In re Nicole B.*, 703 A.2d at 617 (quoting § 15–7–7(b)(1)). "Reasonable efforts" is a subjective standard determined according to a case-by-case analysis. *In re Antonio G.*, 657 A.2d 1052, 1058 (R.I.1995). Generally, it requires that the agency show that "reunification of the family was attempted in good faith." *In re Nicole B.*, 703 A.2d at 617.

In *In re Armand*, 433 A.2d 957 (R.I. 1981), this Court set forth guidelines to be used in determining whether an agency has made reasonable efforts to encourage the parental relationship. They are:

> "(1) consultation and cooperation with parents in developing a plan for appropriate services to the child and his [or her] family;
>
> "(2) making suitable arrangements for the parents to visit the child;
>
> "(3) provision of services and other assistance to the parents so that problems preventing the discharge of the child from care may be resolved or ameliorated; and
>
> "(4) informing the parents at appropriate intervals of the child's progress, development and health." *Id.* at 962.

The record supports a finding that DCYF made reasonable efforts to strengthen and encourage the family relationship in the instant case. DCYF devel-

oped four case plans for the parents designed to reunify the family. Those plans directed, among other things, that the mother and father complete a parenting education course and that the mother undergo a psychological evaluation and participate in individualized therapy if necessary. The plans also provided for weekly supervised visits with the child, and directed that DCYF ensure that the child's physical and emotional needs were met. Pursuant to Kolek's recommendations and before the petition was filed, respondent had completed sixteen weeks of an intensive program designed to address the parents' child-rearing skills. That program included group therapy, parenting instruction, parent-child interaction, psychiatric evaluation, and instruction in environmental safety issues, including hygiene and housecleaning. During that time, respondent was specifically advised about how to hold the child and interact with him to encourage a bond with the baby. However, at the end of the sixteen weeks, respondent was able to learn the concepts only by rote memorization, and she had not established any bond with the child. Rather, the child actively resisted, avoided, and evaded his mother, indicating "that the child did not find any comfort, security or nurturance in his relationship with his mother." Consequently, there is ample support for a finding that DCYF made reasonable efforts to encourage and strengthen the family relationship in the instant case.

For the reasons stated above, the respondent's appeal is denied and the Family Court judgment terminating the respondent's parental rights is affirmed.