**In re JARVIS R. et al.**

**No. 99–371–Appeal.**

Supreme Court of Rhode Island.

Feb. 15, 2001.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Washington Crossing, PA, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on January 22, 2001, pursuant to an order that directed the parties to appear in order to show cause why the issues raised by the appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts insofar as pertinent to this appeal are as follows.

The respondent mother (respondent or mother) appeals from a Family Court judgment terminating her parental rights to three children, Jarvis, born on September 14, 1989, Darius, born on September 22, 1990, and Simeka,[1] born on December 14, 1991. The Department of Children, Youth and Families (DCYF) has been involved with this family since 1987. At that time, respondent's oldest child, Jeffrey, born on June 4, 1987, was living with his mother in a crack house without heat or electricity. A second child, Veronica, was

---

1. Although the documents of the case refer to the child as "Semeka," the child's birth certif-   icate indicates that the proper spelling is "Simeka."

born in April 1988 and tested positive for cocaine. The respondent's parental rights to these two children were terminated in November 1991, following findings that respondent was unsuccessful in active substance abuse counseling, that she could not maintain adequate housing, and that it was in the best interests of the children that her rights be terminated.

In October 1994, Jarvis, Simeka, and Darius were living at home with their mother, who, at the time, was receiving help from a parent aide provided by DCYF. On October 13, 1994, Marilyn Peltier (Peltier), the family's caseworker, made an unannounced visit and observed a gash on Jarvis's head. The respondent told Peltier that Darius had hit Jarvis with a plastic baseball bat, that she had taken him to the hospital, and that she was given an ointment for his wound. Thereafter, on November 1, 1994, Jarvis was removed from the home because of abuse issues. Also, in November 1994, Darius and Simeka were removed for a short time because of neglect issues. Darius and Simeka subsequently were allowed to return home, but were removed again in February 1995 because they had been left home alone while respondent went out to buy drugs. Darius and Simeka have remained in the care of Simeka's paternal great-grandmother, Ethel McCollough, since they were removed from the home in February 1995. Jarvis has remained in foster care since he was taken out of the home on November 1, 1994. Another child, Shania, was born on April 9, 1998. She tested positive for cocaine at birth and currently is in the custody of DCYF. She is not, however, a party to this action.

On March 18, 1995, Peltier developed a reunification case plan that addressed several issues, including substance abuse, proper parenting skills, and the need for individual counseling to help respondent deal with anger appropriately and to learn to use nonviolent discipline on her children. Between March and August 1995, respondent completed a parent education class at the John Hope program and substance abuse treatment at St. Joseph's Commitment to Change program. She also had been referred for individual counseling to address issues of anger and stress. Although respondent had made progress with services by August 1995, the children were not returned to her care. Peltier testified that the children were not returned to respondent's care because respondent still was unable to control the children and because allegations that Darius and Simeka had been sexually abused by respondent's father were being investigated. The respondent denied that the children had been sexually abused.

Janice Bijesse (Bijesse), another caseworker, was assigned to the family from August 1995 to January 1998. Bijesse prepared at least four reunification case plans that addressed issues similar to those previously addressed, as well as sexual victimization issues for the children. When Bijesse first was assigned to the case, DCYF had temporary custody of the children. From November through December 1995, a commitment trial was held. On December 6, 1995, the Family Court ordered that the children be committed to the care, custody, and control of DCYF.

During the period that Bijesse was assigned to the case, she supervised several visits between respondent and the children. Bijesse described these visits as volatile, chaotic, and frequently filled with yelling by the mother. She observed aggressive behavior between the children and respondent's unwillingness to control the children's behavior or to provide activities for the children. She also observed sexually explicit behavior from the children. On one occasion, she observed Darius and Simeka "dancing suggestively; and on some occasions, * * * even tongue kissing." The respondent disagreed that the behavior was inappropriate.

Throughout this period, services were provided to Darius and Simeka through the Rape Crisis Center to address sexual abuse issues. Jarvis was referred to Chil-

dren's Friend and Services, and efforts were made to provide specialized parenting classes for respondent. In June 1996, respondent began classes at the Providence Family Learning Center. In addition, the family was referred to the Children's Museum of Rhode Island for another parenting course. However, there was no improvement in respondent's desire or willingness to properly interact with or discipline the children.

In February 1997, DCYF filed a petition to terminate respondent's parental rights based on the lack of progress and the unlikelihood that the children would be returned to respondent's care. A hearing was held in the Family Court on September 17, 21, and 23, 1998, after which a justice of the Family Court found by clear and convincing evidence that respondent was unfit because of her continued lack of ability to parent the children and address the problems that led to the children's removal from the home. He also found there was no probability that the children would be returned to respondent's care within a reasonable period, considering the children's ages and the need for permanent homes, despite DCYF's reasonable efforts to encourage and strengthen the parental relationship. The respondent appealed.

■ On appeal, respondent argues that the Family Court erred in finding that DCYF made reasonable efforts to address the problems that led to the children's removal from the home. The respondent argues that DCYF did not provide her with services until July 1996 and that the services that were provided were inadequate, given respondent's intellectual limitations. The respondent also argues that the Family Court erred when it held that she bore the burden of establishing that she was mentally impaired "to the degree that specific social services and related case plans could not be understood due to her capabilities."

■ "When considering the termination of parental rights, the Family Court justice must find by clear and convincing evidence that DCYF has made reasonable efforts to reunite parent and child, and that notwithstanding those efforts, the parent is unfit." *In re Shaquille*, 736 A.2d 100, 101 (R.I.1999) (Mem.). "Reasonable efforts" is a subjective standard determined according to a case-by-case analysis. *See In re Antonio G.*, 657 A.2d 1052, 1058 (R.I.1995). "Generally, it requires that the agency show that 'reunification of the family was attempted in good faith.'" *In re Dennis P.*, 749 A.2d 582, 586 (R.I.2000) (quoting *In re Nicole B.*, 703 A.2d 612, 617 (R.I.1997)). The findings of a trial justice are entitled to great weight and will not be disturbed unless they are clearly wrong or the trial justice misconceived or overlooked material evidence. *See In re Shaquille*, 736 A.2d at 101. In addition, when reviewing cases involving the termination of parental rights, "a trial justice's decision will be affirmed if this Court determines that there is legally competent evidence in the record to support the finding." *Id.*

In the instant case, the record supports a finding that DCYF made reasonable efforts to address the problems that led to the children's removal from the home and to reunify the family. DCYF developed at least five different reunification case plans addressing issues including substance abuse, proper parenting skills, the need for individual counseling, and sexual victimization issues for the children. The respondent completed a ten-week parenting course at John Hope Settlement House and an eighteen-week substance abuse treatment program at Commitment to Change. DCYF also sought specialized services for respondent and finally made contact with the Providence Family Learning Center. Among other things, she also was referred to St. Mary's specialized parenting program and to an interactive parenting program held at the Children's Museum. DCYF also provided respondent with counseling services to address her personal issues. Despite these services,

respondent made no progress toward reunification and her compliance with virtually every aspect of each program offered was minimal at best. Accordingly, the trial justice did not err in concluding that DCYF had made reasonable efforts.

 There is no merit to respondent's argument that the Family Court placed upon her the burden of establishing her mental impairment. She bases this argument on the trial justice's statement that "defendant did not offer a scintilla of reliable evidence to indicate to this Court that she is mentally impaired *to the degree that specific social services and related case plans could not be understood due to her capabilities.*" (Emphasis added.) The trial justice simply referred to the burden of going forward with this evidence. This is quite different from shifting the burden of proof. To raise an issue, a party must establish sufficient evidence to create the issue for the Court to consider. Although the burden of proof never shifts from the state, "the burden of going forward with the evidence may indeed shift from side to side, and this same burden may properly devolve upon a defendant once the state has developed a prima facie case and has adduced evidence sufficient to make it just that the defendant be required to challenge the proof with excuse or explanation." *State v. Neary*, 122 R.I. 506, 511–12, 409 A.2d 551, 555 (1979) (citing *Patterson v. New York*, 432 U.S. 197, 203 n. 9, 97 S.Ct. 2319, 2323 n. 9, 53 L.Ed.2d 281, 287 n. 9 (1977)); *see also DeBlois v. Clark*, 764 A.2d 727, 732 (R.I.2001).

In the instant case, the trial justice found:

"[T]he Court notes the defendant's argument that the Department must provide services for her specific [*sic*] in that she is mentally retarded. A review of the record indicates that the defendant did not offer a scintilla of reliable evidence to indicate to this Court that she is mentally impaired to the degree that specific social services and related case plans could not be understood due to her capabilities. The Court, therefore, finds that the defendant has not offered any reliable evidence to support this claim."

The trial justice merely was alluding to the fact that, after DCYF had satisfied its burden of proving that reasonable efforts had been made, respondent's rebuttal evidence was inadequate to show that efforts specifically tailored for an intellectually limited parent were necessary in the case. *See, e.g., In re Frederick*, 546 A.2d 160, 164 (R.I.1988) (statement of Family Court justice that since mother did not testify, there was no evidence put forth by her as to her parenting ability did not erroneously shift burden of proving mother's unfitness away from DCYF). When taken in context, the trial justice merely held that respondent had the burden of going forward with the evidence to give some indication that she was mentally impaired and unable to understand the social services and related case plans that were prepared for her.

For the reasons stated above, the respondent's appeal is denied and the Family Court judgment terminating the respondent's parental rights is affirmed. The papers in the case are remanded to the Family Court.

Justice BOURCIER did not attend oral argument, but participated on the basis of briefs.