COMMUNITY TELEVISION SYSTEMS, INC., d/b/a TCI Cablevision of South Central Connecticut, Plaintiff–Appellee,

v.

Angelina CARUSO, Michael Caruso, Charles Mingrone, Michelle White, and Thomas White, Defendants–Appellants.

Docket No. 00–9117.

United States Court of Appeals, Second Circuit.

Argued Sept. 6, 2001.

Decided March 20, 2002.

Jonathan J. Einhorn, New Haven, Conn., on the brief, for defendants-appellants.

Marilyn B. Fagelson, Murtha Cullina, LLP, New Haven, Conn., on the brief, for plaintiff-appellee.

Before: WALKER, Chief Judge, NEWMAN and CALABRESI, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal concerns the enforcement of the civil penalty provision of the Federal Communications Act, 47 U.S.C. § 605(a), in the context of using descrambler devices to obtain cable television signals for premium and pay-per-view channels without paying the required monthly or special event fees. Five persons who were each assessed maximum statutory damages of $10,000, plus a pro rata share of attorney's fees, appeal the July 19, 2000, amended judgment of the District Court for the District of Connecticut (Alvin W. Thompson, District Judge), entered in favor of appellee Community Television Systems d/b/a TCI Cablevision of South Central Connecticut ("TCI"). The appellants primarily contend that they were found liable under the wrong provision of the Act, that only one amount of statutory damages should have been assessed for each descrambler device installed in a home, and that the amount of attorney's fees is excessive. We agree with their second contention, which results in some adjustment of the assessment of damages and possibly of the fee award. We therefore affirm in part, reverse in part, and remand.

## Background

TCI is a cable operator with a franchise area in South Central Connecticut. Like other cable operators, TCI distributes cable programming to residents in its franchise area for a monthly fee that varies depending upon the extent of programming the subscriber purchases. TCI offers "basic" and "expanded basic" packages and, for an additional monthly fee, access to "premium" channels, such as Home Box Office ("HBO"), Cinemax, and Showtime. TCI also offers pay-per-view programming, which allows subscribers to pay for access to a particular film, sporting event, or music concert.

TCI receives programming for premium channels and special pay-per-view events by means of satellite. TCI gathers the programming through a cluster of antennas referred to as a "head end." TCI then develops a channel line-up by using "modulators" to tune the signals to particular frequencies. The programming is sent to TCI's customers by means of a coaxial ground cable.

The principal means by which TCI prevents unauthorized viewing of its cable programming is to transmit the programming to its customers by means of electronically coded (scrambled) signals. When individuals subscribe for cable services, TCI provides them with electronic decoding equipment, referred to as "addressable converters," which attach to their television monitors. TCI controls the addressable converters from its central offices to permit viewing in descrambled form of only the programming for which subscribers have paid.

In July 1994, the FBI seized the computer of Robert R. Radil, who operated a business involving the manufacture, assembly, sale, and installation of illicit cable descramblers. Radil's devices descramble cable programming, enabling those who install the devices to have free and unlimited access to premium channels and pay-per-view movies and special events. The devices are "non-addressable," meaning

that TCI cannot detect the unauthorized viewing from its central offices.

Radil recorded on his computer files the details of the orders and delivery of the descrambler devices he sold. Culling the names of customers from Radil's computer files and checking with the telephone company and the Department of Motor Vehicles, the FBI compiled a master list of names, addresses, and telephone numbers of Radil's customers ("FBI list").

TCI obtained the FBI list and in July 1997, commenced this action, requesting injunctive and monetary relief under 47 U.S.C. §§ 553(a) and 605(a) against 129 alleged purchasers of Radil's descramblers. As to all but seven defendants, the claims were disposed of by settlement, default judgment, or dismissal.

Five of the remaining seven defendants are the appellants here. They are Michael Caruso and Angelina ("Julie") Caruso, Thomas and Michelle White, and Charles Mingrone. Each of the five appellants either had accounts with TCI or resided in homes that received TCI service, but did not pay for any premium or pay-per-view services, except HBO,[1] between the date of their alleged purchase and the time of trial.[2]

The principal evidence presented to establish the appellants' liability was a "Filled Orders" list from Radil's computer files. The list described the orders for descrambling units that Radil sold and installed. With respect to each of the appellants, Radil's "Filled Orders" list states the customer's name, the television channel selected to receive the customer's cable transmissions, the date the order was placed, the date of delivery, and the type of descrambler ordered.

Radil's records contain one line of information for each unit ordered. The records reflect the following purchasers of units: "Tom/Michelle White," "Michael/Julie Caruso," and "Angela/Chuck Mingrone." The Whites, Carusos, and Mingrones were each married couples living in homes where a descrambler was installed; the Carusos and the Mingrones are now divorced; Angela Mingrone is not a defendant. Radil testified that he personally installed the descrambler units. He also testified that he had no specific recollection of dealing with any of the appellants personally.

Throughout the pretrial depositions and in interrogatories each appellant, except Charles Mingrone, invoked his or her Fifth Amendment privilege against self-incrimination when asked whether he or she had ordered or received a descrambler from Radil, and where the present location of the descrambler might be. Mingrone testified at his deposition that he did not order a descrambler from Radil, did not know Radil, and had never had any contact with Radil. He invoked his Fifth Amendment privilege, however, when asked whether he had used a descrambler, whether anyone living at his address had ordered a descrambler from Radil, and whether his ex-wife was in possession of

1. HBO is not transmitted into subscribers' homes in scrambled form. With respect to HBO programming, TCI uses a second security device, called a "trap," which is installed on telephone poles at subscribers' residences, and removes specified programming from the rest of the transmitted signals. For a subscriber to receive HBO, TCI must send an agent to his or her residence to remove the "trap." The devices at issue in this case descrambled transmitted programming and therefore did not provide access to programming "trapped at the pole."

2. Thomas White, Charles Migrone, Angelina Caruso, and Michael Caruso had accounts with TCI in their own names. Michelle White did not have a TCI account, but resides with Thomas White.

the descrambler. None of the appellants testified at trial.

TCI's complaint alleged that the defendants purchased descramblers and used, or assisted others in using, those devices in violation of 47 U.S.C. §§ 553 and 605. In his Opinion of March 20, 2000, Judge Thompson held that the defendants had violated both sections 553 and 605. *Community Television Systems, Inc. v. Caruso*, 134 F.Supp.2d 455, 461 (D.Conn.2000) (*"Caruso"*). Acting pursuant to section 605, Judge Thompson assessed each appellant the maximum statutory damages of $10,000, 47 U.S.C. § 605(e)(3)(C)(i)(II), awarding TCI a total of $50,000.[3] Judge Thompson subsequently awarded TCI attorney's fees and costs in a total amount of $90,083.27. He accepted the formula proposed by TCI to allocate liability for a portion of the attorney's fees to each of the seven defendants (two of whom are not appellants) according to their pro rata share of each component of the fee.[4] This resulted in the following individual assessments against the five appellants: Angelina Caruso, $14,243.62; Michael Caruso, $12,677.49; Charles Mingrone, $13,421.12; Michelle White, $13,239.62; Thomas White, $13,239.62.

**3.** Damages of $10,000 each were also awarded against two defendants who are not parties to this appeal.

**4.** For example, a component of the fee incurred early in the litigation when there were 129 defendants was divided by 129; a component incurred at a later date when settlements had reduced the number of defendants to 48 was divided by 48; and the fees incurred after only the seven defendants remained were divided by seven. Each defendant's pro rata shares of each component were added together, and increased by a pro rata share of any fees (or costs) attributable solely to that defendant.

**5.** As we described in *International Cablevision, Inc. v. Sykes* (*"Sykes I"*), 997 F.2d 998, 1007 (2d Cir.1993), the principal substantive

## Discussion

### I. The Applicable Statutory Provision

■ The appellants contend that Judge Thompson erred in holding them liable under 47 U.S.C. § 605. They assert that the applicable statutory provision is 47 U.S.C. § 553. Section 605(a) provides:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Section 553(a)(1) provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

The appellants contend that because section 605 concerns "radio communication" and section 553 more specifically concerns "cable system[s]," the latter provision, with its arguably more lenient consequences for violators,[5] should apply.

differences between the two enforcement schemes lie in (a) the minimum statutory damages and (b) the respective attorney's fee provisions. Section 553 provides a statutory damages range for personal use of cable descramblers of $250 to $10,000, and states that the judge "may" award reasonable attorney's fees. Section 605 provides a statutory damages range for interception for personal use of $1,000 to $10,000, and requires the judge to award reasonable attorney's fees. Section 605 is therefore viewed as "more severe" than section 553.

It is worth noting, however, that section 605 is not inherently more severe than section 553. Section 605(e)(3)(C)(ii) permits the court, in its discretion, to impose enhanced damages when it finds that "the violation was committed willfully and for purposes of . . .

This Court has previously ruled that section 605 applies in cases involving the sale of descrambling devices as long as the head end of the cable system at issue receives at least some radio transmissions. *International Cablevision, Inc. v. Sykes* ("*Sykes II*"), 75 F.3d 123, 131 n. 5, 133 (2d Cir.1996). Two circuits have disagreed with this view, *see TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 197 (3d Cir.2001); *United States v. Norris*, 88 F.3d 462, 469 (7th Cir.1996), but we are bound by *Sykes II*. Judge Thompson determined that "TCI's cable service involves radio and satellite transmissions." *Caruso*, 134 F.Supp.2d at 461. Although section 553 could be applied as an alternative to section 605, the District Court was entitled to assess damages under the latter provision. *Sykes II*, 75 F.3d at 129; *International Cablevision, Inc. v. Sykes* ("*Sykes I*"), 997 F.2d 998, 1009 (2d Cir.1993).

## II.   The Amount of Damages

The appellants allege that the District Court erred in assessing against each of them the $10,000 maximum damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), which provides:

> the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just. . . .

private financial gain ... by an amount of not more than $100,000 for each violation of subsection (a) of this section." Section 605(d)(5), however, prohibits the judge from applying 605(e)(3)(C)(ii) to individuals violating the act for their private use.

In contrast, section 553(c)(3)(B) provides that when a violation was committed for the purpose of private financial gain, "the court ... may increase the award of damages ... by an amount of not more than $50,000." Section 553, however, has no limiting provi-

They assert that a "violation" should be limited to the illicit use of one cable descrambling unit. Their contention raises three subsidiary issues: (a) how many violations occurred, (b) how many people are liable for the damages resulting from each violation, and (c) as to each descrambler installed in a home, are separate awards of damages to be assessed against each person held liable for a violation, or are some of them jointly and severally liable for a single award of damages.

■ (a) *Number of violations.* The five appellants are alleged to have violated the portion of section 605(a) providing that an unauthorized person shall not "receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." In the context of an alleged violation arising from a descrambling device, unless some limiting construction is given to the potentially far-reaching scope of this prohibition, a violation might be thought to occur every time a person "receive[s]" TV images transmitted by radio waves and "use[s]" such images "for his own benefit" by enjoying a telecast. Such a construction would impose liability upon household guests, children, and baby-sitters. Where the alleged violation arises from the use of a descrambling device, we think a violation occurs each time a device is purchased and installed.[6] Thus, in the pending case,

sion. Indeed, individual purchasers of cable descrambling units have been fined enhanced damages. In *Cablevision Systems New York City Corp. v. Lokshin*, 980 F.Supp. 107, 109–10, 114–15 (E.D.N.Y.1997), which, like this case, involved an individual who used a cable descrambler, the judge awarded the maximum statutory damages under section 553— $10,000—and then awarded enhanced damages of $10,000.

**6.**   *Cf.* 47 U.S.C. § 605(e)(4), the provision relating to manufacturers and sellers, rather

there was one violation in each of the homes for which a device was purchased and installed.

■ (b) *Who is liable for each violation?* Of course, more than one person can be liable for a single violation, a proposition that is self-evident as to both criminal and civil liability. In the pending case, the seller's computer records showed the names of the Carusos, the Whites, and Mingrone as purchasers, and the devices were installed in their homes. That evidence suffices to create at least a rebuttable presumption that each of them is liable. It may be that the appearance of a spouse's name in a seller's computer records can occur without the spouse taking part in the purchase, much less the installation, of the purchased device.[7] The seller might simply be recording the names of both occupants of the home, writing down the two names printed on a check used to purchase the device, or for other reasons adding to the seller's customer base. But as long as the spouse is afforded an opportunity to rebut the presumption with testimony of no participation in the purchase or installation, the presumption may remain and permit a finding of liability.

■ (c) *Individual or joint awards?* There remains the issue of whether each appellant is liable for an individual assessment of damages or each pair (in the case

of the Carusos and the Whites) is jointly and severally liable for one assessment. Although analogies might be drawn from various civil damage contexts to support either individual or joint awards, our task is to give sensible content to the imprecise damage provisions of a federal regulatory statute whose drafters in all likelihood did not have cable descrambling devices for home use in mind. In the context at hand, we think section 605 is sensibly construed to create joint and several liability among those found liable for a single award of damages attributable to the purchase and installation of a single descrambler device. As to each device purchased and installed, the cable service provider has been injured by one loss of revenue,[8] and, in the absence of proof of actual damages, those liable are fairly adjudged jointly and severally liable for one award of statutory damages.

### III. Attorney's Fees

■ The District Court concluded that, pursuant to 47 U.S.C. § 605(e)(3)(B), TCI was entitled to an award of attorney's fees and costs. The Court awarded a total of $90,083.27, but elected to impose liability upon each of the seven defendants found liable, five of whom are the appellants here, only for each defendant's pro rata share of each component of the fee award.

than users, of cable descramblers, which states that "each such device shall be deemed a separate violation." *See Lokshin,* 980 F.Supp. at 113.

7. It is worth recalling that the explanation of Mr. Bumble's solicitor, "the law supposes that your wife acts under your direction," evoked Mr. Bumble's famous response, "If the law supposes that, ... the law is a ass—a idiot." Charles Dickens, *Oliver Twist* 520 (Dodd, Mead & Co.1941) (1838).

8. We have no occasion in this case to consider the issue that has divided some district

courts as to whether, with respect to statutory damage awards, multiple violations occur because of the extended duration of the period in which a device is installed. *Compare Charter Communications Entertainment I, LLC v. Shaw,* 163 F.Supp.2d 121, 124–25 (D.Conn. 2001) (duration relevant) (citing *Time Warner Cable of New York City v. Barbosa,* No. 98 CIV 3522 JSMRLE, 2001 WL 118608, at *5 n. 1 (S.D.N.Y. Jan. 2, 2001)); *Time Warner Cable of New York City v. Fland,* No. 97 CIV 7197 BSG SEG, 1999 WL 1489144, at *3 (S.D.N.Y. Dec. 3, 1999) (same), *with Lokshin,* 980 F.Supp. at 113 (duration not relevant).

Normally, the total amount of an attorney's fee award is imposed jointly and severally upon all defendants found liable, at least in the absence of "separate and distinct" fee components attributable to the litigating tactics of individual defendants. *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir.1990). However, TCI has not cross-appealed to seek an increase in the amount of fees assessed against each appellant, and we therefore will not review the District Court's decision to apportion fees on a pro rata basis.

 The appellants contend that the amount of the attorney's fees awarded is unreasonable. Specifically, they assert that the District Court erred in including as components of the individually pro-rated fee award $49,999.50 for a failed summary judgment motion and $9,695.50 for compiling the fee application.

 "Our review of an award of attorneys' fees is 'highly deferential to the district court'; we will reverse on appeal only for an abuse of discretion." *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 146 (2d Cir.2001) (quoting *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir.1999)). The appellee's attorneys submitted a detailed affidavit outlining their fees, carefully calculated to the nearest tenth of an hour for every aspect of the litigation. The fees per hour ranged from $90, for work of a junior paralegal, to between $240 to $275, for the work of the most experienced attorney on the case. We see no basis for saying that the District Court exceeded its discretion in making the fee award. Indeed, the decision to make a pro rata apportionment of each component of the award was generous to the appellants.

Nevertheless, now that we have revised the damages from five individual awards of $10,000 to three awards, two of which are imposed jointly and severally upon the Ca-

rusos and the Whites, respectively, and one upon Mingrone, we deem it appropriate, in the resulting remand, to authorize the District Court to revisit the apportionment of fees and determine whether the amounts of fees assessed against the appellants should be reduced and whether any fee amounts for which the Carusos and Whites are liable should be imposed on each couple jointly and severally.

### Conclusion

The judgment of the District Court is affirmed in part, reversed in part, and remanded for recalculation of damages and reconsideration of the award of attorney's fees. No appellate costs are awarded.