**DIRECTV, INC. Plaintiff,**

v.

**Toni LOVEJOY, Defendant.**

**No. CV–03–215–B–W.**

United States District Court,
D. Maine.

Feb. 16, 2005.

David C. King, Rudman & Winchell, Debra Anne Reece, Rudman & Winchell, Bangor, ME, for Plaintiff.

G. Bradley Snow, Tanous & Snow, E. Millinocket, ME, for Defendant.

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

WOODCOCK, District Judge.

These dispositive motions address the narrow issue of whether and the extent to which this Court may draw an adverse inference from a party's assertion of the Fifth Amendment privilege. DirecTV, Inc., the Plaintiff, operates a digital satellite entertainment business, beaming programming to its subscribers. To receive and view DirecTV's signal, a subscriber must be equipped with digital satellite system hardware. Once DirecTV transmits its signal, anyone with the right equipment can decode the encrypted signal and, in the case of non-subscribers, enjoy DirecTV's programming without suffering the disadvantage of actually paying for it. DirecTV claims Toni Lovejoy, the Defendant, did just that: purchased and used a pirate access device to facilitate unauthorized access to DirecTV's programming.[1] In response to discovery, Ms. Lovejoy asserted her Fifth Amendment privilege to remain silent, challenging DirecTV to prove its case without her testimony. The parties filed cross-motions for summary judgment. This Court concludes it cannot grant summary judgment to DirecTV based exclusively on negative inferences from Ms. Lovejoy's assertion of her Fifth Amendment privilege and, absent such negative inferences, there exist genuine issues of material fact. Therefore, this Court DENIES both parties' motions for summary judgment.[2]

## I. FACTUAL BACKGROUND

### A. DirecTV

DirecTV provides digital satellite television programming to its subscribers throughout the United States. To receive satellite television, subscribers must be equipped with specialized hardware, including a satellite dish, an integrated receiver/decoder (IRD), and an access card to operate the IRD. DirecTV encrypts its signals so that only its subscribers may access its programming.

### B. Modern Day Pirates

Once DirecTV transmits its encrypted signal, it is subject to electronic hijacking by simple decoding.[3] To protect its investment and prevent unauthorized use of its signal, DirecTV periodically updates its security system by installing and administering electronic countermeasures (ECMs). ECMs send a signal that targets unauthorized access cards and disables them. In response to DirecTV's security measures, satellite pirates [4] have developed pirate ac-

---

1. DirecTV alleges Ms. Lovejoy violated 47 U.S.C. § 605 and 18 U.S.C. § 2511(1)(a).

2. Plaintiff has conceded that summary judgment is appropriate as to Count III only and this opinion is substantively restricted to the remaining counts.

3. For an overview of satellite television piracy, its history, and applicable statutes, see David V. Lampman, II, *The Unusual Suspects: Unscrambling Satellite Piracy*, 22 Cardozo Arts & Ent. L.J. 553 (2004).

4. A "pirate" in this context is someone who uses computer hardware and software to hack

cess devices, such as bootloaders, dead processor boot boards, glitches, HU loaders, emulators ("EMU"), and unloopers, which circumvent DirecTV's encryption and simulate critical functions in its access cards. For example, the EMU is hooked up to a computer that sends a signal to the IRD, which decrypts the television signal. In essence, the EMU makes the satellite believe the unauthorized user has a valid access card and subscription. DirecTV and these electronic pirates engage in a serious game of technological leapfrog: DirecTV implements a new, more sophisticated security system, which is breached by the pirates; DirecTV devises an even more sophisticated system, only to be compromised.

### C. The Computer Shanty

On or about December 1, 2001, DirecTV alleges it executed writs of seizure with the assistance of the United States Marshals Service against The Computer Shanty, an internet seller of pirate access devices. (Compl. ¶ 16 (Docket # 1)). Through The Computer Shanty raid, DirecTV confiscated records that "confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DirecTV's Satellite Programming." (*Id.*). DirecTV also obtained "various business records evidencing the ongoing illegitimate enterprise, including orders, invoices, electronic communications, shipping documentation, purchase receipts, credit card receipts and customer lists." (*Id.*).

### D. The Computer Shanty and Ms. Lovejoy

DirecTV alleges that The Computer Shanty's customer lists confirm Ms. Love-

joy made two purchases of pirate access devices. (*Id.* ¶¶ 16, 19). Specifically, DirecTV asserts that, on or about September 25, 2000, Ms. Lovejoy purchased one Wildthing X Super Unlooper from The Computer Shanty, and that, on or about March 25, 2001, Ms. Lovejoy purchased one Atmel Coded with X Code from The Computer Shanty. (*Id.* ¶ 19). DirecTV alleges Ms. Lovejoy purchased these devices from The Computer Shanty by placing the orders using interstate or foreign wire facilities, the devices were shipped to Ms. Lovejoy's address in Brownville, Maine, and she received the devices through the United States Postal Service or commercial mail carriers. (*Id.* ¶¶ 19, 20). DirecTV further claims Ms. Lovejoy "manufactured, assembled, distributed, and/or sold one or more Pirate Access Devices, knowing or having reason to know that the design of such devices render them primarily useful for the purpose of surreptitious interception of DIRECTV's satellite transmissions." (*Id.* ¶ 21). Other than admitting she is a resident of Brownville, Ms. Lovejoy either denied or pleaded she is without sufficient knowledge to form a belief regarding each substantive allegation. (Aff. Def. and Ans. ¶¶ 1–48 ("Ans.")(Docket # 7)).

### E. Ms. Lovejoy Asserts the Fifth Amendment

After suit was filed, DirecTV and Ms. Lovejoy engaged in discovery. Although forthcoming in her response to some of DirecTV's inquiries, when asked about the essential allegations of this law suit, she demurred, asserting her Fifth Amendment right not to incriminate herself.[5] Ms. Lo-

---

into DirecTV's security system and decrypt the signal without paying the subscription fee.

5. For example, during her deposition, Ms. Lovejoy refused to answer the question, "Have you ever purchased a pirate device?"

vejoy also engaged in discovery directed toward forcing DirecTV to concede it cannot prove its case without her testimony.[6]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law," *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000), and for an issue to be "genuine," the evidence relevant to the issue, viewed in the light most favorable to the non-moving party, must be "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). The trial court is obligated to view the entire record in the light most hospitable to the nonmovant and indulge "all reasonable inferences in that party's favor." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir.1997); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

## III. LEGAL BACKGROUND

DirecTV's Motion for Summary Judgment addresses three counts: 1) Count I— Unauthorized Reception of Satellite Signals in Violation of 47 U.S.C. § 605(a); 2) Count II—Unauthorized Interception of Electronic Communications in Violation of 18 U.S.C. § 2511(1); and, 3) Count IV— Assembly, Manufacture, and/or Modification of Devices or Equipment in Violation of 47 U.S.C. § 605.[7]

### A. Count I: 47 U.S.C. § 605(a): Unauthorized Reception

In 1984, Congress recodified and amended § 605 of the Cable Communications Policy Act of 1934 to address the interception of satellite programming.[8] Section 605(a) makes it illegal to intercept radio communications for one's benefit without authorization from the sender. It provides

---

(Pl.'s Material Statement of Facts Not in Dispute ("PSMF") ¶ 12 (Docket # 18)). In its motion, DirecTV raised the question as to whether Ms. Lovejoy could selectively assert the Fifth Amendment. This Court assumes DirecTV raised this issue prophylactically, anticipating Ms. Lovejoy might file a countervailing affidavit. She did not do so. Although she testified during discovery on some tangential issues, as DirecTV has pointed out, Ms. Lovejoy consistently refused to answer questions concerning the statutory elements of its claims. In these circumstances, *Mitchell v. United States*, 526 U.S. 314, 321–22, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), does not appear implicated.

6. For example, Ms. Lovejoy asked DirecTV to admit it has no evidence she ever actually used a pirate access device. (Pl.'s Resp. to Def.'s First Req. for Admis. ¶ 6 (Docket # 16)).

7. In its Response to Ms. Lovejoy's Motion for Summary Judgment, DirecTV conceded summary judgment is appropriate in favor of Ms. Lovejoy on Count III, which alleged that Ms. Lovejoy distributed one or more pirate access devices to third parties, a violation of 47 U.S.C. § 605(a). (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3, 8 (Docket # 22)). Summary judgment will be granted by consent of the parties on Count III only.

8. Congress also added a new section, 47 U.S.C. §§ 521–59, which has been interpreted as addressing unauthorized reception of cable, as opposed to satellite television signals. For an overview of § 605 and its relationship to §§ 521–59, see *TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. 727, 733–37 (D.R.I.1996).

both criminal[9] and civil[10] penalties for violation. § 605(e). Section 605(a) does not prohibit the purchase or possession of pirate access devices; it prohibits, instead, the interception and publication of signals. 47 U.S.C. § 605(a)("No person not being entitled thereto shall *receive or assist in receiving* ... interstate or foreign communication by radio" and "[n]o person having received any intercepted radio communication ... shall *divulge or publish* the existence, contents, substance, purport, effect, or meaning of such communication ....")(emphasis added).

### B. Count II: 18 U.S.C. § 2511(1): Unauthorized Interception

DirecTV also alleges a violation of 18 U.S.C. § 2511(1), which itself provides criminal[11] and civil[12] penalties for the intentional interception of electronic communication or the intentional use of "any electronic, mechanical, or other device to intercept any oral communication." 18 U.S.C. §§ 2511(1)(b)(i)-(v), 2511(4), 2511(5), 2520. Section 2511, part of the Electronic Communications Privacy Act (ECPA), was amended in 1986 "to include electronic communications, with the idea in mind that the wiretap laws had to be updated so as to take into account new computer and telecommunication technologies, including satellite transmissions." *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir.1992).[13]

### C. Count IV: 47 U.S.C. § 605(a): Assembly, Manufacture and/or Modification of Devices

DirecTV's remaining count alleges that Ms. Lovejoy assembled, manufactured and/or modified existing equipment know-

9. A person who willfully violates § 605(a) is subject to a fine of not more than $2,000 or imprisonment for not more than six months or both, and any person who violates § 605(a) willfully and for direct or indirect commercial advantage or private financial gain is subject to a fine of not more than $50,000 or imprisonment for not more than two years, or both, for the first conviction, and a fine of not more than $100,000 or imprisonment for not more than 5 years, or both, for any subsequent conviction. 47 U.S.C. § 605(e)(1), (2).

10. An aggrieved person may file a civil action for "temporary and final injunctions," an award of damages, and attorney fees. *Id.* § 605(e)(3)(B)(i)-(iii). The statute provides for recovery of actual damages or statutory damages of not less than $1,000 or more than $10,000 for each violation. *Id.* § 605(e)(3)(C)(i)(I)-(II). If the violation was willful and for direct or indirect commercial advantage or private gain, the court may increase the award of damages by an amount of not more than $100,000. *Id.* § 605(e)(3)(C)(ii). On the other hand, if the court finds the violator was not aware and had no reason to believe his acts constituted a violation of § 605, the court may reduce the award of damages to not less than $250. *Id.* § 605(e)(3)(C)(iii).

11. A violator of 18 U.S.C. § 2511(1), who has not been found liable in a civil action under 18 U.S.C. § 2520, is subject to imprisonment for not more than five years and may be enjoined against further violations. A person who violates § 2511(1) and has previously been found liable in a civil action under § 2520 is subject to imprisonment for not more than five years and a mandatory $500 fine. 18 U.S.C. §§ 2511(4), (5).

12. Under § 2520, a person whose electronic communications have been intercepted is authorized to recover in a civil action preliminary and other equitable or declaratory relief, damages, and, if appropriate, punitive damages, as well as attorney fees and costs. *Id.* §§ 2520(a), (b). If the signal is encrypted, the statute provides for actual damages and profits made by the violator or statutory damages of $100 per day for each day of violation or $10,000, whichever is greater. *Id.* § 2520(c)(2)(A), (B).

13. Whether mere possession of a pirate access device constitutes a violation of law is a matter of some controversy. *Compare DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th Cir.2004), *with DIRECTV, Inc. v. Drury*, 282 F.Supp.2d 1321, 1323–24 (M.D.Fla.2003).

ing or having reason to know that the device thereby created was primarily of assistance in the unauthorized interception or reception of its satellite television programming. Section 605(e)(4) provides penalties for any person who "manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of ... direct-to-home satellite services." § 605(e)(4). This provision contains a separate criminal sanction.[14] *Id.*

## IV. DISCUSSION

### A. Ms. Lovejoy's Fifth Amendment Privilege

It is well settled adverse inferences may be drawn in a civil case from a party's assertion of a Fifth Amendment privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *In re Carp*, 340 F.3d 15, 23 (1st Cir.2003)("[I]n a civil proceeding, the drawing of a negative inference is a permissible, but not an ineluctable, concomitant of a party's invocation of the Fifth Amendment."); *Arthurs v. Stern*, 560 F.2d 477, 478 (1st Cir.1977); *TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. 727, 728 n. 1 (D.R.I.1996). The trial court has the discretion whether to apply a negative inference. *In re Carp*, 340 F.3d at 23. However, in the civil context, the parties are "on a somewhat equal footing, one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding." *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir.1996). Because the privilege is constitutionally based, the trial court should "strive to accommodate a party's Fifth Amendment interests," while at the same time, ensure that "the opposing party is not unduly disadvantaged." *Id.* The First Circuit has cautioned that "the balance must be weighed to safeguard the Fifth Amendment privilege." *Id.*

In evaluating whether to draw an adverse inference in this case, it is noteworthy that each statute under which DirecTV is proceeding civilly contains a criminal sanction, and the elements of its civil law suit generally mirror the elements for criminal violation. The statutory interweaving of the criminal and civil elements raises a facially legitimate question as to whether Ms. Lovejoy could effectively defend the civil suit without implicating concomitant criminal provisions.

### B. The Necessary Inferences

■ In its memoranda, DirecTV makes the point that Ms. Lovejoy "has pled the Fifth Amendment ... to every essential element of Counts I, II and IV of the Complaint." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4 (Docket # 22); *see also* Reply to Def.'s Obj. to Pl.'s Mot. for Summ. J. at 7 (Docket # 28)). Ms. Lovejoy pleaded the Fifth Amendment to questions concerning: 1) her purchase of two pirate access devices; 2) whether the devices she purchased were primarily designed, configured and marketed for purposes of obtaining access to DirecTV programming without authorization; 3) what legitimate purpose there was for her purchase or use of the pirate access devices; 4) whether she purchased, received, or used the pirate access devices; (5) whether she received or assisted others in receiving DirecTV satellite transmissions without authorization, or whether she used the devices or was successful in using the devices for unauthorized reception;

---

**14.** Each violation of § 605(e)(4) is sanctioned by a fine of not more than $500,000 or a term of imprisonment not to exceed 5 years, or both. § 605(e)(4).

and, 6) whether she has ever received DirecTV programming she has not paid for. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5).

■ Before drawing a negative inference in a civil matter from a party's assertion of the Fifth Amendment, the court should be convinced it is necessary to do so. *See Serafino*, 82 F.3d at 519. Turning to the preliminary question of whether Ms. Lovejoy actually purchased a pirate access device, this Court cannot conclude, based on this record, that there is no alternative means of proof available to DirecTV other than drawing a negative inference from Ms. Lovejoy's assertion of a constitutional privilege. In its Complaint, DirecTV alleges its search of The Computer Shack business records confirmed that Ms. Lovejoy purchased two specific pirate access devices on specific dates and that these devices were shipped to her residence in Brownville, Maine. (Compl.¶ 19). Unlike many of her responses, where she said she did not have the knowledge and information sufficient to form a belief as to DirecTV's allegations, as regards her purchase of these devices, Ms. Lovejoy denied in her Answer that she purchased them. (Ans.¶ 19).

Initially, DirecTV assumed she had admitted the purchases. (Pl.'s Mot. for Summ. J. at 2–3 (Docket # 17))("There is no dispute that Defendant has purchased illegal pirating equipment used primarily for the unlawful decryption and viewing of DIRECTV satellite television programming."). Ms. Lovejoy responded by clarifying she had never admitted purchasing these devices. (Def.'s Obj. to Pl.'s Mot. for Summ. J. at 9 (Docket # 24))("Defendant has not admitted to purchasing either of the 'devices' in question."). Faced with these denials, however, DirecTV produced no evidence to the contrary and instead elected to rely on the negative inference.[15]

It strikes this Court that this is analogous to the rule that a court "will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936)(Brandeis, J., concurring); *Cuesnongle v. Ramos*, 835 F.2d 1486, 1495 (1st Cir.1987). In *Serafino*, for example, where Mr. Serafino, the plaintiff, asserted the Fifth Amendment in refusing to respond to discovery, the First Circuit noted that the trial court had asked whether there was "an effective substitute for Ser-

**15.** This approach contrasts with other DirecTV cases. For example, in *DIRECTV, Inc. v. Adkins*, 311 F.Supp.2d 544 (W.D.Va.2004), DirecTV supported its motion for summary judgment with "purchase records from Mountain Electronics to substantiate its allegations that defendants . . . purchased . . . signal theft devices." *Adkins*, 311 F.Supp.2d at 548. Similarly, in *DirecTV, Inc. v. Dougherty*, No. 02–5576, 2003 U.S. Dist. LEXIS 23666 (D.N.J. Sept. 10, 2003), *vacated on other grounds by*, 2003 U.S. Dist. LEXIS 23654 (D.N.J. Oct. 8, 2003), DirecTV obtained invoices from a raid on CardCleaners, a business allegedly focused on the distribution of pirate access devices. DirecTV attached copies of the invoices to its Complaint and the

court reviewed them in ruling on DirecTV's motion for default. DirecTV cites *Community Television Systems, Inc. v. Caruso*, 134 F.Supp.2d 455 (D.Conn.2000), *aff'd in part, rev'd in part on other grounds*, 284 F.3d 430 (2d Cir.2002). But, in *Caruso*, the plaintiff had supplied the court with records confirming the defendants' purchases.

It also contrasts with DirecTV's reaction to Ms. Lovejoy's assertion that it did not have any direct evidence to prove its allegations. DirecTV supplied an affidavit from William Gatliff, an expert in the field. Mr. Gatliff provided an evidentiary basis for a conclusion that the devices in the Complaint are designed to circumvent DirecTV's signal encryption.

afino's answers." *Serafino,* 82 F.3d at 518. The trial judge concluded "there are no company records or other Hasbro employees whose information could effectively substitute for responses from George Serafino himself." *Id.* at 519. Having made this determination, the trial court concluded the plaintiffs' invocation of the Fifth Amendment privilege justified dismissal of the law suit, since the information was crucial to the defendants' ability to mount a defense. *Id.* By contrast, in this case, DirecTV forced the constitutional issue, rather than produce either probative evidence within its possession, custody or control, or an explanation as to why that evidence is unavailable. *See id.* at 518 ("[T]he Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information *and there is no other less burdensome effective means of obtaining it.*") (citation and internal punctuation omitted)(emphasis added).

### C. The *Baxter* Limitation

■ In addition, because DirecTV, by its admission, has not produced any evidence on the essential elements of its case and instead relies exclusively on negative inferences, it runs afoul of what is termed the *Baxter* limitation. In *Baxter,* although holding that the Fifth Amendment does not forbid adverse inferences against parties to civil actions, the United States Supreme Court noted that Mr. Palmigiano was silent "in the face of evidence that incriminated him" and his silence was given "no more evidentiary value than was warranted by the facts surrounding the case." *Baxter,* 425 U.S. at 317–18, 96 S.Ct. 1551. *See also Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). *Baxter's* limitation has been interpreted as follows: "although inferences based on

the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds." *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 391 (7th Cir.1995) (citations omitted). As *LaSalle* pointed out, drawing a negative inference from the assertion of a Fifth Amendment privilege is especially problematic in the context of a motion for summary judgment, where the court is obligated to draw all reasonable inferences against the moving party. *Id.* at 391 n. 7 ("Treating Segubans' silence as a separate piece of evidence supporting the Bank's motion for summary judgment and drawing inferences against the Segubans on the basis of that fact seems to be in tension with the ordinary summary judgment rule that all reasonable inferences must be drawn in favor of the nonmovant."); *Fidelity Funding of Calif., Inc. v. Reinhold,* 79 F.Supp.2d 110, 116 (E.D.N.Y.1997)("While plaintiff is certainly correct in pointing out that a court is permitted to draw an adverse inference in a civil proceeding from a party's invocation of the Fifth Amendment privilege, ... the evidence produced by a nonmoving party's silence is not sufficiently weighty to carry a moving party's burden in a motion for summary judgment.").

Here, Ms. Lovejoy asserted her Fifth Amendment privilege on all essential elements of the law suit, and DirecTV has produced no independent evidence supporting the factual allegations in its Complaint. There is no evidence she ever even purchased the devices; only DirecTV's allegation she did so. In these circumstances, DirecTV's motion relies exclusively on negative inferences from Ms. Lovejoy's assertion of the Fifth Amendment privilege, and under the *Baxter* limitation, must fail.

### D. Ms. Lovejoy's Motion for Summary Judgment

 It is one thing to say this Court must not draw negative inferences from Ms. Lovejoy's assertion of her Fifth Amendment privilege to prove all essential elements of DirecTV's case. It is quite another thing to draw positive inferences from her silence and grant summary judgment in her favor.[16] In ruling on Ms. Lovejoy's motion for summary judgment, this Court must view the record in a light most favorable to DirecTV and give it the benefit of all reasonable inferences. *See Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). This Court concludes there are genuine issues of material fact as to whether Ms. Lovejoy purchased one or more pirate access devices and used them in her home to obtain unauthorized access to DirecTV's satellite programming.

## V. CONCLUSION

Defendant's Motion for Summary Judgment is GRANTED by consent as to Count III only. Plaintiff's and Defendant's motions for summary judgment are otherwise DENIED.

---

16. Ms. Lovejoy cites *DirecTV v. Morris*, No. 03CV201 (E.D.Tex. July 16, 2004), where the court refused to apply a negative inference from the defendant's assertion of his Fifth Amendment privilege. In *Morris*, however, the defendant filed an affidavit effectively admitting that he had purchased the devices, but denying he had used them. The court ruled, *"[i]n light of Morris' affidavit*, the Court draws no negative inference from the exercise of his constitutional right." *Morris*, No. 03CV201, at 7 (emphasis added).